STATE of Missouri, Plaintiff–
Respondent,

v.

Robert L. NAUCKE, Defendant–
Appellant.

No. 73536.

Supreme Court of Missouri,
En Banc.

April 21, 1992.
Rehearing Denied June 2, 1992.

N. Scott Rosenblum, Ramona Marten, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

THOMAS, Judge.

Defendant was convicted of sodomy of his four-year-old daughter (T.N.) and was sentenced to fifteen years imprisonment. Defendant appealed to the Court of Appeals, Eastern District, on various grounds, including the claim that his right to confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 18(a), of the Missouri Constitution was violated by the use of the deposition of the child victim pursuant to § 491.-680, RSMo 1986, from which the defendant was excluded pursuant to § 491.685, RSMo 1986. The court of appeals transferred the case to this Court because of the constitutional issue. We affirm the judgment of the trial court.

## I.

## CONFRONTATION

### A.

*Sections 491.680 and 491.685—Is Confrontation Violated by Taking of Child Victim's Videotaped Testimony Out of the Presence of the Defendant?*

#### 1.

*The Testimony Supporting the Unavailability of the Child Witness*

Section 491.680 authorizes the court to order an *in-camera* videotaped recording of the testimony of an alleged child victim under Chapter 565 (Offenses Against The Person), Chapter 566 (Sexual Offenses Including Sodomy), and Chapter 567 (Prostitution). Section 491.680 provides that in determining whether to issue an order, the court shall consider "the emotional or psychological trauma to the child if required to testify in open court *or* to be brought into the personal presence of the defendant." (Emphasis added.) Section 491.685 authorizes the court to exclude the defendant

from the deposition proceedings while the child testifies.

■ In *State v. Sanchez*, 752 S.W.2d 319 (Mo. banc 1988), this Court held that a deposition taken pursuant to § 491.680 may be admitted at trial without violating the Confrontation Clauses of the United States and Missouri Constitutions. However, prior to admitting such a deposition, the state must produce, at a hearing, evidence sufficient to establish that the emotional and psychological trauma that would result from testifying in open court *or* in the personal presence of the defendant in effect makes the child unavailable as a witness at trial. *Sanchez* preceded *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), which held that a procedure to allow the child witness to testify in a child abuse case outside the defendant's physical presence would not violate confrontation provided there is a case-specific finding[1] that the child witness will suffer serious emotional distress if required to testify in the presence of the defendant. The trial court must find that the child witness will be traumatized, not by the courtroom generally, but by the presence of the defendant. The emotional impact on the child must be more than *de minimis*, i.e., more than "mere nervousness or excitement or some reluctance to testify." *Craig*, 497 U.S. at ——, 110 S.Ct. at 3169. Thus, we were on the right track in *Sanchez*, but we must now modify our holding to conform with *Craig*. If the defendant is to be excluded from the deposition proceedings, the personal presence of the defendant must cause the emotional and psychological trauma of the child witness.

■ On the first day of the trial but before the actual beginning of the trial in the present case, the trial court held a hearing to determine whether to allow the child victim's deposition to be taken out of the presence of the defendant and then used at trial under the procedure described

---

**1.** *Compare Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), holding that confrontation was violated where the defendant was in the courtroom but was screened from the view of the child witness. This procedure was required in all child abuse cases with no requirement for individualized findings of the need for special protection in the particular case.

in §§ 491.680 and 491.685. The prosecution called as a witness in support of its motion Judith Schechtman, a social worker to whom T.N. had been referred for evaluation and counseling by the child abuse team at Cardinal Glennon Children's Hospital. At trial, the defendant objected to this finding on the ground that Ms. Schechtman, as a social worker, was not qualified to give psychological testimony. Defendant contends on appeal that the trial court erroneously based its finding on this testimony because it allowed the presentation of T.N.'s statements pursuant to the procedure provided in § 491.680, in violation of his constitutional rights.

Ms. Schechtman testified she had a Bachelor's Degree in Psychology from Northwestern University and a Master's Degree in Social Work from Washington University. Prior to her present position, she worked in several special treatment centers where some of the patients were sexually abused children. For the past four years, she has worked with Masters and Johnson exclusively in the treatment of sexually abused children. Her primary job entails interviewing children who have been brought to the clinic with complaints or allegations of sexual abuse. In the past year, she has interviewed over 500 such children. She had approximately thirty sessions with T.N. between November 2, 1987, the date of her first interview, and October 24, 1988, the date of her testimony. During the first portion of that period, she met with T.N. once a week and, toward the end, every other week.

Ms. Schechtman testified that T.N. said the defendant (T.N.'s father) told T.N. not to talk about any of the sexual events that had occurred, that if T.N. told anyone the defendant might have to go to jail and that the defendant would kill T.N., T.N.'s mother and T.N.'s grandmother. Ms. Schechtman described T.N., as T.N. discussed these threats, as "fearful and terrified. Her eyes were quite wide and she was running around in my office, not sitting still and trying not to answer me." Ms. Schechtman testified further on direct examination that she thought it would be extremely unlikely that T.N. would be able

to testify if forced to do so in the presence of the defendant. On cross-examination, Ms. Schechtman indicated it was her understanding that she would not be allowed to testify, in the words of the statute, that the child witness would be traumatized, but Ms. Schechtman would be willing to express her view regarding the initial trauma of testifying. Defendant's counsel then asked for Ms. Schechtman's opinion, and she stated, "I think this child would break down. When I began seeing her she was not sleeping nights, was not able to sleep alone, was not concentrating, in fact and if forced to face this man with testimony here in court it would be absolute that these symptoms would reoccur." She also testified on cross-examination, "I am telling you my opinion is T.N. is going to have a hard time testifying no matter what and to put her face-to-face with her father, it would be traumatizing."

In *Craig*, 497 U.S. at ——, 110 S.Ct. at 3169, the Court held that a finding by the trial court that "the child witness will suffer 'serious emotional distress such that the child cannot reasonably communicate,' [the requirement of the Maryland statute] clearly suffices to meet constitutional standards." This is, in substance, the thrust of the testimony given by Ms. Schechtman as to T.N.'s ability to testify in the presence of the defendant and is fully adequate to support a finding that will meet the requirements of § 491.680 as well as the demands of confrontation.

We disagree with defendant in his contention that Ms. Schechtman was not qualified to testify as to the potential effect of T.N. testifying in the presence of the defendant. Ms. Schechtman's job involves interviewing and communicating with children who have been sexually abused; she regularly works with twenty such children a week and, as a result of her work and experiences, she qualifies as an expert in the problems of communicating with a child abuse victim. We do not believe that § 491.680 necessarily requires the testimony of a psychiatrist, psychologist or physician. Ms. Schechtman's testimony was both competent and sufficient to support

the trial court's findings as to the necessity for taking T.N.'s deposition out of the presence of the defendant under the requirements set forth in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157.

## 2.
### *The Trial Court's Finding that the Child Witness Was Unavailable*

■ At the conclusion of Ms. Schechtman's testimony in the hearing on the prosecution's motion to take the deposition of T.N. out of the presence of the defendant and use it at trial under § 491.680, the court made the following finding:

THE COURT: Let the record show that we have just heard the State's Motion to allow the victim, [T.N.], to testify by way of videotaped deposition and it is sustained after hearing under Section 491.680 that [T.N.] would suffer emotional or psychological trauma if required to testify in open court or in the personal presence of defendant.

The Court further finds that this trauma would in effect make the child unavailable as a witness.

It is important to note that the trial court found that either testifying in open court or testifying in the presence of the defendant would cause T.N. to suffer emotional and psychological trauma. This is important because *Maryland v. Craig* requires that the emotional or psychological trauma be caused by testifying in the personal presence of the defendant and not by the open courtroom. Here, the trial court found that in the alternative, either would cause such trauma; the second half of that finding, i.e., testifying in the personal presence of the defendant, meets the requirement set forth in *Maryland v. Craig*.

The issue has been raised as to whether the level of emotional or psychological trauma found by this trial court is serious enough to meet the requirements of *Maryland v. Craig* in that respect. In *Maryland v. Craig*, the Maryland statute required "serious emotional distress such that the child cannot reasonably communicate," and this was the finding the trial court made. In holding that the finding

under the Maryland statute was sufficient, the Court discussed what is required without spelling out a minimum standard:

Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, i.e., more than "mere nervousness or excitement or some reluctance to testify." *Wildermuth* [*v. State*], 310 Md. [496], at 524, 530 A.2d [275], at 289 [1987]; see also *State v. Mannion*, 19 Utah 505, 511–512, 57 P. 542, 543–544 (1899). We need not decide the minimum showing of emotional trauma required for use of the special procedure, however, because the Maryland statute, which requires a determination that the child witness will suffer "serious emotional distress such that the child cannot reasonably communicate," § 9–102(a)(1)(ii), clearly suffices to meet constitutional standards.

Thus, the salient features of this holding are that, because of emotional distress described as serious, the child cannot communicate. Moreover, it is clear that this level of emotional distress is more than sufficient to meet confrontation requirements, i.e., something less will pass muster.

■ In the finding below, the trial court did not use the adjective, "serious," but, more importantly, found that the expected emotional and psychological trauma if required to testify in the personal presence of the defendant would make the child unavailable as a witness. This was the requirement that we spelled out in *State v. Sanchez*, 752 S.W.2d 319, in response to the defendant's objection that § 491.680 did not specify what evidence of trauma must be produced before the deposition may be admitted without violating the Confrontation Clauses of the United States and Missouri Constitutions. *Id.* at 322. The leading case in Missouri on the meaning of "unavailability" is *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284, 289 (1945), which says that a witness is unavailable "whenever the *testimony* of the witness is unavailable as a practical proposition." (Emphasis added.) Unavailability in Missouri is not limited to situations where the witness is

absent from the courtroom, such as where the witness is deceased, or beyond the range of a subpoena, or cannot be found. It also includes circumstances where the witness is, or could be, present in the courtroom but, for some legitimate reason, testimony is unavailable, such as where the witness claims the privilege against self-incrimination, *Sutter, id.; State v. Holt*, 592 S.W.2d 759, 766 (Mo. banc 1980), or could not testify by reason of loss of memory, *Orr v. State Farm Mutual Automobile Insurance Co.*, 494 S.W.2d 295, 299 (Mo. banc 1973). The finding by the trial court that the trauma would make the child unavailable as a witness when considered in light of Missouri's cases as to the meaning of "unavailability" convinces us that the trial court's finding fully meets the requirements of *Maryland v. Craig* for allowing the deposition to be taken out of the presence of the defendant.

The dissenting opinion by Chief Justice Robertson asserts that the majority has amended § 491.680 by adding requirements. In a sense, this is true, but we would point out that it is common for the Sixth Amendment to add requirements to a statute or common law rule that admits certain evidence in criminal cases. For example, in the first confrontation/hearsay cases involving the use of testimony from a preliminary hearing as prior reported testimony, the common law evidence rule merely required was that the witness be unavailable. Evidentiary rules said that if the witness was beyond the range of a subpoena, that was good enough; the confrontation rule added the requirement that the witness be actually unavailable. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). In other words, it was not enough for the witness to be beyond the range of the subpoena; the witness must have refused to come to court voluntarily. Beginning with *Barber v. Page* and continuing through the development of the confrontation/hearsay cases, it has been common practice to use the Confrontation Clause to add necessary requirements to the state evidentiary rules. In the present case, the Sixth Amendment functions in the same manner in relation to §§ 491.680 and 491.685.

We hold that the trial court's finding that T.N. would suffer emotional and psychological trauma, which would in effect make her unavailable as a witness if required to testify in the personal presence of the defendant, satisfies the threshold requirement of *Maryland v. Craig* for the use of such a deposition.

### B.

*Does The Missouri "Deposition" Procedure Under §§ 491.680 and 491.695 Provide Confrontation Protection Equal to that Provided by the In–Camera Video Testimony Procedure Approved in Maryland v. Craig?*

■ We must now consider whether the differences between the procedure followed in *Maryland v. Craig* and those followed under § 491.680 and § 491.685 caused the Missouri "deposition" procedure to violate confrontation. In *Craig*, the child witness testified by one-way closed circuit television from a room outside the courtroom. The child, the prosecutor and defense counsel withdrew to another room, where the child was examined and cross-examined. The judge, jury and defendant remained in the courtroom, and the testimony of the child was shown in the courtroom on a closed circuit television. The judge, jury and the defendant could see the child witness and the questioners via the television; the child witness could not see the defendant, nor anyone else in the courtroom.

The Missouri procedure differs in that the child witness' deposition is taken prior to trial and shown by videotape during the trial. The Maryland procedure produces what is called "in-camera testimony" while the Missouri procedure produces what is called a "deposition." Since labels may be misleading, we need to examine whether there is any difference in the two procedures in substance that causes Missouri's procedure to violate confrontation while the Maryland procedure does not.

Recent United States Supreme Court cases have pointed out that the application

of the confrontation clause to out-of-court hearsay statements historically began with concerns regarding the trial of criminal cases with evidence presented by the prosecution by mere depositions or affidavits. *See White v. Illinois*, ——— U.S. ———, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). This proposition was actually rejected by the majority in *White v. Illinois* where Justice Thomas dissented, joined by Justice Scalia; Justice Thomas suggested that the Court should consider returning to a rule that would refuse to apply confrontation principals to any hearsay statements other than depositions, affidavits and prior testimony.

It is unfortunate that the Missouri procedure produces testimony that is labeled a "deposition." While it probably technically constitutes a deposition, it is clear that it is a very special type of deposition requiring specific features that approach the equivalent of in-court testimony. As with any other deposition, the statute requires that the testimony be under oath and subject to cross-examination. More importantly, the taking and use of the "deposition" in the present case resulted in testimony that had the following common characteristics of in-court testimony. (1) The testimony was recorded on videotape and shown to the jury so that jurors had every opportunity to consider the demeanor, the appearance and all the factors that go into evaluating live testimony at trial. (2) The judge was present when the deposition was taken and ruled on the admission of evidence in the same manner as at trial and generally conducted the proceedings very much in the same manner as at trial. (3) Although not mandated by the statute, in this case, the setting for the deposition was in the same courtroom where the jury would try the case and view this testimony only three days later. (4) Also in the present case, the timing of the taking of the deposition, as a practical matter, made it essentially part of the trial.

The trial was scheduled to begin on Monday, October 24, 1988, and, on that date, the defendant and his counsel, the prosecutor, and the child victim and her mother came to the courtroom at approximately 11:30 A.M. and began taking T.N.'s deposition, which concluded at approximately 2:40 P.M. Immediately thereafter, the trial began with the voir dire of the jury, the opening statements and the introduction of evidence. Three days later, on October 27, 1988, T.N.'s testimony was shown to the jury on the videotape, affording the jury the same opportunity that it would have had to observe the appearance and demeanor of the witness as if the testimony had been presented to the jury via one-way television from outside the courtroom, as was done in *Craig*.

If one will ignore the label in § 491.680 that identifies this testimony as a "deposition," it is difficult, if not impossible, to point to any significant difference in the context of confrontation requirements between this testimony and the procedure used in *Craig*. Both procedures differ from traditional testimony given in the courtroom in the presence of the defendant. However, this difference in both procedures as compared to live, in-court testimony was justified by the determination in *Craig* that the state's legitimate interest in the physical and psychological well-being of child abuse victims outweighs the defendant's right to pure face-to-face confrontation. It would be straining at a gnat for this Court to somehow find that the *Craig* procedure is sufficient to meet all confrontation requirements while the procedure provided for under § 491.680 somehow fails to meet those confrontation requirements.

It is worth noting that in footnote 2 of the majority opinion in *Craig*, Justice O'Connor refers to the various states that have enacted statutes to protect child witnesses from the trauma of giving testimony in child abuse cases. In footnote 2, Justice O'Connor lists thirty-seven states, including Missouri, that permit the use of videotaped testimony, i.e., depositions of sexually abused children. In footnote 3, she lists twenty-four states that provide for one-way closed circuit television (including Maryland), and, in footnote 4, she lists eight states that authorize two-way closed

circuit television. She does not articulate any distinction between the deposition procedure (as in Missouri) and the in-camera video testimony procedure (as in Maryland). In other words, Justice O'Connor appears to treat the Missouri procedure as the equivalent of the Maryland procedure and, indeed, we believe this is entirely correct.

In *Spigarolo v. Meachum,* 934 F.2d 19 (2nd Cir.1991), the United States Court of Appeals rejected the defendant's contention that "his constitutional rights were violated because the videotape was made before the jury was sworn and was not 'live' as was the one-way closed circuit procedure in *Craig.*" *Id.* at 24. The defendant argued that his counsel was unable to gauge the reaction of the jury during cross-examination and could not tailor his cross-examination based upon the course of events that transpired during the trial. *See also Brady v. State,* 575 N.E.2d 981 (Ind.1991), holding that the Indiana procedure providing in the alternative for videotaped, pretrial testimony similar to the Missouri procedure did not violate defendant's Sixth Amendment confrontation rights under the United States Constitution.[2]

Defendant argues in this Court for the first time that the Missouri "deposition" procedure under § 491.680 and § 491.685 violates confrontation when the defendant who is excluded from the taking of the deposition does not have contemporaneous viewing of the deposition while it is being taken and does not have means such as an intercom or telephone to communicate with his attorney during the taking of the deposition. These features were necessarily present in *Craig* because the jury viewed the testimony as it was being given. If the defendant had not had an opportunity to view the testimony as it was given and to talk with his attorney while the testimony was in progress, he would have been foreclosed from participating in the cross-examination. An opportunity to view the deposition later and make suggestions to or ask questions of his counsel would have been too late because the jury would have already received the evidence.

Section 491.680 provides that the child shall not be excused as a witness at the taking of the deposition until the defendant has had a reasonable opportunity to review the videotape in private with his counsel, consult with his counsel, and cross-examine the child following such review and consultation. The luxury of more deliberate viewing and consultation is possible under the Missouri procedure because the giving of the testimony and the receipt of it by the jury are not simultaneous. It seems to us that this procedure affords the defendant a better opportunity to evaluate, make suggestions and provide information to his counsel for use on cross-examination than the procedure used in *Craig.* If we are correct that this method actually improves the opportunity for effective cross-examination, then how can it be said that this difference between the two procedures causes our method of protecting a child witness to violate confrontation while the method used in Maryland satisfies confrontation? The only possible distinction that could be said to favor the Maryland procedure would be the argument that the direct examination would somehow become "set" before defendant and his counsel could respond by cross-examination. However, it is clear that an opportunity for cross-examination, even if delayed, meets confrontation requirements. In *California v. Green,* 399 U.S. 149, 159, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), the Court said, "[T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial."

We believe the short delay occasioned by allowing the defendant and his counsel an opportunity to view, evaluate and discuss the direct examination in private confer-

---

**2.** However, in *Brady v. State, supra,* the Indiana court held that the face-to-face provision of the Indiana Constitution requires a two-way closed circuit television arrangement so that the witness can see the defendant and the trier of fact, and the defendant and the trier of fact can see the witness.

ence before proceeding with cross-examination cannot possibly jeopardize the effectiveness of the cross-examination such that it violates confrontation. Most trial lawyers who have experienced the panic of being required to go forward with cross-examination when they were praying for a recess for thought and preparation before cross-examination will readily understand that the defendant's contention in this respect is, in fact, backwards. We do not find any basis for a violation of confrontation in the procedure set forth in § 491.680 that allows the defendant and his counsel an opportunity to confer and prepare for cross-examination during a recess between direct and cross-examination.

We hold that the Missouri "deposition" procedure in § 491.680 and § 491.685, as used in this case, does not violate confrontation under the Sixth Amendment of the United States Constitution. We believe that the defendant's confrontation rights are protected under the Missouri "deposition" procedure for the same reasons and at least to the same extent as was afforded to the defendant in *Maryland v. Craig* by the Maryland in-camera testimony procedure.

## C.

*Are the Confrontation Provisions of the Missouri Constitution Violated?*

■ Defendant bases his claims that his rights to confrontation were violated upon his confrontation rights under both the Sixth Amendment to the United States Constitution and his rights under the confrontation provisions of the Missouri Constitution.

In *State v. Hester*, 801 S.W.2d 695 (Mo. banc 1991), in considering whether confrontation was violated, we held that testimony by a police detective, pursuant to § 491.075, concerning statements made by a child abuse victim to the detective two days after the alleged abuse had occurred, did not violate confrontation. In *Hester*, the child was present at trial and answered two or three questions but, thereafter, failed to respond to additional questions by the prosecutor. At that point, the child was ex-

cused from the witness stand. Defense counsel made no attempt to cross examine. We rejected defendant's argument that Article I, Section 18(a), of the Missouri Constitution, which specifies that "the accused shall have the right ... to meet the witnesses against him face to face," is more restrictive than the Confrontation Clause of the Sixth Amendment of the United States Constitution.

In *State v. Schaal*, 806 S.W.2d 659 (Mo. banc 1991), with Judge Robertson writing for the majority, this Court held that a videotaped interview of a child abuse victim by a psychologist admitted under § 492.304 did not violate confrontation where the child victim was available to testify, although neither the state nor the defendant called her as a witness. In the context of the facts in *Schaal*, this Court again held that "[t]he confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *Id.* at 662.

In the very early case, *State v. McO'Blenis*, 24 Mo. 402 (1857), this Court considered whether the face-to-face language of the Missouri Constitution excludes the use of a deposition and a dying declaration against the defendant in a criminal case. In holding that it does not, the Court pointed out that these exceptions to the hearsay rule were well established at the time the Constitution was adopted and such testimony was never intended to be excluded by the face-to-face language. Over the years, we have consistently refused to apply the face-to-face language of Section 18(a) literally to exclude evidence admitted under hearsay exceptions, which were truly not "face to face." *See State v. Simpson*, 625 S.W.2d 957 (Mo.App.1981) (hospital records admitted under the business records exception); *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256 (1939) (prior reported testimony); *State v. Colvin*, 226 Mo. 446, 126 S.W. 448 (1910) (dying declaration). If we were to rigidly apply the "face to face" requirement, no hearsay exception evidence would be admissible against any defendant in any criminal case where the

declarant does not testify at trial because the declarant in such a circumstance is not "face to face" with the defendant. Such an interpretation of Article I, Section 18(a), would indeed result in a major difference in the confrontation protection afforded by the Missouri Constitution as opposed to that afforded by the Sixth Amendment of the United States Constitution.

Even though this Court has held twice in the last fifteen months that the "face to face" language in the Missouri Constitution creates the same confrontation rights as the Sixth Amendment of the United States Constitution, we need not consider, in the present case, whether the "face to face" language of Article I, Section 18(a), bars the use of a deposition taken under §§ 491.-680 and 491.685. The express language of Article I, Section 18(b), specifically provides for the use of deposition testimony against a defendant in a criminal case under circumstances such as those required by §§ 491.680 and 491.685. Article I, Section 18(b), of the Missouri Constitution provides as follows:

> Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will fully protect the rights of personal confrontation and cross-examination of the witness by defendant, the state may take the deposition of such witness and either party may use the same at the trial, as in civil cases, provided there has been substantial compliance with such orders....

Section 18(b) is essentially an exception to the "face to face" requirement of Section 18(a) so that, if the deposition taken under §§ 491.680 and 491.685 [3] does not violate Section 18(b), then it does not violate the confrontation requirements of the Missouri Constitution. Section 18(b) contains four requirements. They are: (1) that the wit-

ness be within the state; (2) that the witness be other than the defendant and his or her spouse; (3) that the circuit court find that it is necessary to take the deposition in order to preserve testimony; and (4) that the conditions under which the deposition is taken fully protect the rights of personal confrontation and cross-examination of the witness by defendant.

The first two requirements are clearly met in this case. As to the third requirement, that the deposition "be in order to preserve the testimony," this phrase means that the deposition must be taken for the purpose of use where the witness is unavailable as opposed to being taken for discovery or impeachment. *State v. Kelley*, 693 S.W.2d 114 (Mo.App.1985). The finding of the trial court that T.N. would suffer emotional and psychological trauma, which would make her unavailable as a witness, specifically and precisely meets this third requirement.

The fourth requirement of Section 18(b) has two prongs. Under one of those prongs it is required that the deposition procedure fully protect the rights of cross-examination of the witness by defendant. This requirement is met by the provisions of § 491.685, which require that the witness shall not be excused until the defendant has had a reasonable opportunity to review the videotape in private with his counsel and to consult with his counsel and until his counsel has been afforded the opportunity to cross-examine the witness following such review and consultation, all as discussed in this opinion.

The other prong of the fourth requirement of Article I, Section 18(b), that the conditions of the taking and use of the deposition fully protect the rights of personal confrontation of the witness by defendant, expressly requires the type of analysis this Court is engaged in throughout Part I of this opinion, i.e., the determination of whether defendant's rights of confrontation have been violated. We hold

---

**3.** Although Article I, § 18(b), provides for the taking and use of the deposition "on condition that the court make [certain] orders," it appears that the conditions that will fully protect the rights of personal confrontation and cross-examination of the witness by defendant may also be provided by statute. See § 492.303, RSMo 1986.

that the rights of personal confrontation expressly required by Article I, Section 18(b), of the Missouri Constitution are the same rights of confrontation as are guaranteed to defendant under the Sixth Amendment of the United States Constitution.

We must consider the same issue under § 491.685 as the United States Supreme Court considered in *Maryland v. Craig,* i.e., whether the exclusion of the defendant from the deposition proceeding at which the child is to testify violates confrontation. In *State v. Jackson,* 495 S.W.2d 80 (Mo. App.1973), the court of appeals held that a deposition taken by defendant's counsel when the defendant was not present did not meet the confrontation requirements of Article I, Section 18(b). However, the defendant in *Jackson* was an adult and, although defendant was deceased at the time of trial, there was no apparent reason for the absence of the defendant at the time the deposition was taken.

As discussed above, in *Maryland v. Craig,* under the procedures we find to be similar to those required by § 491.685, the United States Supreme Court held confrontation was not violated. We agree with the rationale of *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, that, although the Confrontation Clause reflects a preference for "face-to-face" confrontation at trial, this is a preference that must occasionally give way to considerations of public policy and the necessities of the case. We agree with the conclusion of the Court that the state's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh a defendant's right to face his or her accusers in court. We held earlier in this opinion that the Missouri "deposition" procedure in §§ 491.680 and 491.685, as used in this case, affords the defendant confrontation rights at least equal to the confrontation procedure available to the defendant in *Maryland v. Craig* under the in-camera video testimony procedure used therein. Just as the United States Supreme Court in *Maryland v. Craig* refused to second guess the considered judgment of the Maryland legislature regarding the importance of its interest in protecting child abuse victims

from the emotional trauma of testifying, we likewise will not second guess our legislature regarding the importance of protecting child abuse victims. Accordingly, we hold that under the requirements set forth in §§ 491.680 and 491.685, Missouri's interest in protecting child witnesses from serious emotional distress if required to testify in the presence of the defendant is sufficiently important to justify the use of the special procedure provided by those sections. Under the rationale of *Maryland v. Craig,* which we embrace, the Missouri procedure under §§ 491.680 and 491.685 does not violate confrontation under Article I, Section 18(b) of the Missouri Constitution nor under the United States Constitution.

### D.

#### *Competency of Child Witness under § 491.060*

Defendant's other major confrontation argument is that T.N., who was five years old at the time of trial, was not a competent witness and, therefore, defendant was denied his right to a fair trial. This contention was raised for the first time in this Court; it was not raised in the trial court and, therefore, is not properly preserved for appellate review. Nevertheless, we will refer to our prior precedent on this issue. Section 491.060, RSMo, provides that a child under ten years of age who is a victim of sexual abuse shall be considered a competent witness and shall be allowed to testify without qualification in a judicial proceeding involving such alleged offense. In *State v. Williams,* 729 S.W.2d 197 (Mo. banc 1987), we upheld the constitutionality of this statute under the defendant's attack based on both due process and confrontation where the child testified at trial and was subject to cross-examination. Since we hold that T.N.'s testimony under § 491.680 is essentially the equivalent of the in-camera video testimony used in *Maryland v. Craig,* the holding in *Williams* is applicable in the present case. Even if defendant made a timely and proper objection concerning the competency of T.N. as a witness and thereby properly preserved

this constitutional argument, we reject defendant's confrontation argument directed at § 491.060.

### E.

### Dr. Monteleone's Testimony Relating to Child Victim's Out-of-Court Statements

Defendant raises another confrontation problem with respect to the testimony of Dr. Monteleone concerning certain statements by T.N. at the time she was brought to Cardinal Glennon Hospital for evaluation and treatment by the child sexual abuse team. Section 491.075, RSMo, provides that if the trial court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of statements made by the child provide sufficient "indicia of reliability", and if the child either testifies at the proceedings or is unavailable as a witness, such statements are admissible. In effect, § 491.075 creates a new statutory hearsay exception for the out-of-court statements of a child victim in a sexual abuse case.

*Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), sets forth a series of "indicia of reliability" rules applicable to out-of-court statements admitted when the witness is unavailable. If the statement is admissible under a deeply-rooted (traditional) exception to the hearsay rule, it will be deemed to have adequate "indicia of reliability" and will not violate confrontation. On the other hand, if a statement that does not fit within a deeply-rooted hearsay exception is admitted, then the admission of such statement will vio-

late confrontation unless there is an adequate showing of particularized guarantees of trustworthiness. Statements of a child victim, admissible only under § 491.075, are not admissible under a deeply-rooted exception to the hearsay rule; such statements would be blatant hearsay in the absence of the statute allowing their admission. Thus, the admission of such statements will violate the "indicia of reliability" rule unless there is an adequate showing of particularized guarantee of trustworthiness.[4]

Dr. Monteleone, a pediatrician on the child sexual abuse team at St. Louis University Cardinal Glennon Children's Hospital, testified to certain statements reportedly made by T.N. at the time of her evaluation and treatment. Six other witnesses[5] also testified to statements made by T.N. following the alleged sexual abuse. The trial court held an "indicia of reliability" hearing on the § 491.075 statements of each of these six witnesses and, in each instance, found the statements had "indicia of reliability" as required by § 491.075 and the "indicia of reliability" requirement of *Roberts*.[6]

■ The trial court did not hold an "indicia of reliability" hearing with respect to Dr. Monteleone's testimony concerning statements of T.N. At the beginning of Dr. Monteleone's direct examination, a bench conference was requested by defense counsel to raise this issue; the court explained his apparent refusal to require such a hearing by stating "medical history.... He is taking down a medical history. This is an exception to the general rule. Sometimes a medical doctor will take

---

**4.** See the recent case of *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which discusses in detail the type of in-chambers hearing and finding by the trial court that is necessary to meet confrontation requirements for the out-of-court statements of a child sexual abuse victim admitted under an Idaho statute similar to § 491.075, RSMo.

**5.** Cindy Naucke, T.N.'s mother; Patricia Scherzinger, a nurse at the SAM Clinic; Mary Ann Moran, an employee of Dr. Lowther, a pediatrician who examined T.N. on October 30, 1987 (Ms. Moran described her job as putting patients in a room and determining the nature of

their visit.); Barbara Gueller, a secretary/receptionist from Dr. Lowther's office; Judith Schechtman, a clinical social worker at the Masters and Johnson clinical program for sexually abused children; and Dorcas Ramsey, a pediatric nurse-practitioner from Dr. Lowther's office.

**6.** In the present case, there was no objection at trial and no issue on appeal as to the sufficiency of the "indicia of reliability" hearings nor to the admission of T.N.'s out-of-court statements as testified to by the six witnesses listed in footnote 5.

the history and qualify the records." Defense counsel then stated, "Okay. I state my objection for the record." Giving both defense counsel and the trial court the benefit of the doubt as to these somewhat incomplete statements regarding the objection and the ruling, we will treat the defendant's objection as an objection that an "indicia of reliability" hearing was required as provided in § 491.075 and by the "indicia of reliability" requirement of *Roberts* for a non-traditional hearsay exception. The trial court apparently ruled that any statements that T.N. made to Dr. Monteleone in connection with Dr. Monteleone's evaluation and treatment of T.N. would be admissible under Missouri's exception to the hearsay rule for statements made to a treating physician. *Breeding v. Dodson Trailer Repair*, 679 S.W.2d 281 (Mo. banc 1984); Mo.Evidence Restated, § 803(4) (1984). This ruling was correct; if T.N. had made statements in Dr. Monteleone's presence at the time he evaluated and treated her, these statements would be admissible under this exception to the hearsay rule, which is a deeply-rooted, traditional hearsay exception that, under the first "indicia of reliability" rule in *Roberts*, provides adequate "indicia of reliability" so that there is no violation of confrontation. *See White v. Illinois*, — U.S. —, 112 S.Ct. 736, 116 L.Ed.2d 848, involving this same type of evidence and ruling.

Following the bench conference, Dr. Monteleone testified on direct examination, "[s]he [T.N.] gave a positive history and that history is she described oral sex, fondling and hymenal pain, which is ripping or a tear. She drew a drawing consistent with sex abuse." Dr. Monteleone then proceeded to describe physical findings from his physical examination of T.N. and behavioral indicators he observed in T.N. that were the basis of his conclusion that, "I thought we had reason to suspect sexual abuse." On cross-examination it was developed that T.N. did not make these statements in the presence of Dr. Monteleone; he did not take the history but relied upon information given to him by therapist Patty Scherzinger, who made a videotape of that interview, which is referred to in this opinion as the videotaped interview at the Special Assessment Management (SAM) Clinic. Dr. Monteleone could not testify unequivocally whether he only received the information from Ms. Scherzinger or whether he also reviewed the videotape. Ms. Scherzinger was one of the six prior witnesses who had already testified to statements made by T.N. without objection by the defendant and as to which the trial court had held an "indicia of reliability" hearing. Except for the bench conference at the beginning of Dr. Monteleone's testimony where defendant objected to the absence of an "indicia of reliability" hearing as to Dr. Monteleone, defendant made no objection at any time to any of the testimony of Dr. Monteleone concerning the statements made by T.N.

■ Even if Dr. Monteleone had testified to statements made in his presence by T.N., an "indicia of reliability" hearing would not have been required under § 491.075 nor under the principles of confrontation because such statements would have been admissible under Missouri's exception to the hearsay rule for statements made to a treating physician. To the extent that Dr. Monteleone testified to what Ms. Schechtman told him, which probably constituted some form of double hearsay, his testimony was not prejudicial error; first, because no objection was made; and second, because such testimony was cumulative of the testimony previously given by Ms. Schechtman as to statements made by T.N. to her and, as to which, the trial court had held an "indicia of reliability" hearing. The defendant's contention that Dr. Monteleone's testimony about T.N.'s statements to him violated his constitutional rights is without merit and is rejected. His testimony did not require the use of § 491.075, did not require an "indicia of reliability" hearing and to the extent there was any other potential error involved in his testimony about T.N.'s statements, it was neither preserved nor prejudicial.

## II.

### SUFFICIENCY OF THE EVIDENCE

■ Defendant contends that the evidence was insufficient to make a submissi-

ble case on the crime of sodomy. Section 566.060.3 provides: "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." "Deviate sexual intercourse" is defined, for purposes of Chapter 566, by § 566.010(2) as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person."

Early in her deposition, T.N. identified portions of her anatomy, such as her nose, eyes, mouth, stomach and, importantly for her testimony in this case, her "peedy" (her term for her vagina) and her "butt" (the buttocks area). She used the term "peedy" with undeviating consistency. Early in her testimony, she was asked: "Do you know what it is to be touched in a bad place?" And she nodded her head yes. She was asked, "What is a bad touch?" and she answered, "Peedy and butt." She testified to the critical facts of sodomy as follows:

Q Can you tell the judge and for the jury whether or not your dad touched any of those places.

A Yes, he did.

Q Where did he touch you, [T.]?

A My butt and my peedy.

Q [T.], can you tell us how your dad touched your peedy?

A Well, he got his finger ready, then he touched it.

Q Do you remember where this happened?

A At his house.

\* \* \* \* \* \*

Q Did your Daddy Bob [defendant], did he ever kiss you anywhere?

A Un-huh.

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that question. It's been asked and answered once and now the prosecuting attorney is leading the witness.

THE COURT: The witness didn't answer that. You may proceed.

A He kissed me on my butt and peedy.

Q [T.], do you remember where he would do that?

A He would do that stuff all to [sic] his home.

Dr. Monteleone gave T.N. a physical examination. He found physical injuries in and about T.N.'s vagina that were consistent with sexual abuse. Dorcas Ramsey, a nurse-practitioner in Dr. Lowther's office, also found physical injury consistent with sexual abuse.

 In passing on the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. We must take the evidence in the light most favorable to the state. *State v. Brown*, 660 S.W.2d 694 (Mo. banc 1983). The small portion of the evidence recited above amply demonstrates that there was sufficient evidence to support the finding of guilt of the offense of sodomy.

### III.

### SHOWING VIDEOTAPED INTERVIEW AND DEPOSITION DURING JURY DELIBERATIONS

 Defendant also complains that the trial court erred by allowing the jury to review the SAM Clinic videotape of T.N.'s interview at Cardinal Glennon Hospital and T.N.'s videotaped deposition. During deliberations, the jury requested that they be allowed to review T.N.'s videotaped deposition and the SAM Clinic videotaped interview of T.N. The SAM Clinic videotape had been described in the evidence by Ms. Scherzinger, who conducted the interview. The videotape of the interview was admitted into evidence without objection[7] but was not shown to the jury prior to the beginning of their deliberations.

Sometime after deliberations had begun, the jury sent a note to the judge requesting certain exhibits, including T.N.'s videotaped deposition and the videotaped interview at the SAM Clinic. The record contains a copy of the note from the jury, with a notation by the judge stating, "Sent," and his initials. Both parties acknowledge

---

7. At the time of the offer, defense counsel stated affirmatively, "No objection."

that the videotaped deposition and the videotaped interview were shown to the jury during deliberations. However, there is nothing on the record to reflect the position of the parties with respect to the court's response to the note and, particularly any objection to or acquiescence in sending the tapes to the jury by either party.

■ Because the record does not indicate what occurred with respect to the use of the videotaped interview and the videotaped deposition during the deliberations, we are unable to determine whether any objection was made by either party or whether the parties may have agreed to the use of the evidence. Defendant cites in support of this point Legal File p. 24 and Supplemental Legal File p. 2. Legal File p. 24 is the note sent down by the jury requesting various items. Supplemental Legal File p. 2 is a handwritten order entered by the trial judge dated September 7, 1990, in which the trial court acknowledges that at the time T.N.'s deposition was played for the jury during the state's case-in-chief, defendant objected on constitutional grounds. This portion of the record has nothing to do with the showing of the deposition, or the videotaped interview during jury deliberations, or what objection, if any, either party made when that occurred. Parties seeking to reverse the trial court on appeal have the obligation to make a record demonstrating the error. *Kaelin v. Nuelle*, 537 S.W.2d 226 (Mo.App.1976). Thus, in the absence of any record showing what occurred at the trial level related to this claimed error, the Court on appeal is obligated to affirm the trial court. *Id.* We affirm on this issue.

### IV.

### OTHER CLAIMED TRIAL COURT ERRORS

■ Defendant raises several other allegations of trial error and concludes each Point Relied On by stating he was thereby denied his right to a fair trial. However, these issues involve claims of non-constitutional trial error, none of which were preserved at the trial level as constitutional issues. Constitutional issues must be raised at the earliest possible time. *Christiansen v. Fulton State Hosp.*, 536 S.W.2d 159 (Mo.1976).

■ The first such issue arose when one of the jurors openly cried during the showing of the videotaped deposition of T.N. at the end of the state's case. At the conclusion of the deposition, defense counsel first moved for a mistrial and then moved alternatively to disqualify the juror and to replace her with an alternate juror. The trial court denied both motions. Defense counsel did not request a voir dire of the jury nor of this particular juror. In *State v. Stith*, 660 S.W.2d 419 (Mo.App. 1983), defendant moved to voir dire the jury because information published in a newspaper article during trial may have caused the jury to form an opinion based on the newspaper article. The trial court overruled the motion. The court of appeals held that such a motion is addressed to the sound discretion of the trial judge and the exercise of that discretion will be disturbed on appeal only when the record shows a manifest abuse of discretion. The appeals court said the trial court must make a determination as to whether the publicity creates a dangerous, substantial prejudice to the accused. The trial court's denial of the motion did not constitute manifest abuse of discretion and, therefore, was not set aside on appeal.

In *Stith*, the court of appeals cited *State v. Schlagel*, 490 S.W.2d 81 (Mo.1973), also a newspaper publicity case wherein this Court held that the trial court did not abuse its discretion in declining to question the jury during trial concerning a newspaper article. The Court said that each case must be decided on its facts and in the exercise of the trial court's discretion. It is important to note that, unlike the newspaper cases where the jury was exposed to information not properly a part of the record, in the present case the juror's response was to properly admitted evidence intended to be viewed and considered by the jury.

In *State v. Woodrome*, 758 S.W.2d 136 (Mo.App.1988), the court held that whether

the entire panel is tainted by a statement of a panel member is in the trial court's discretion. In deciding there was no abuse of discretion, the court pointed out that "[o]rdering a mistrial is drastic and should be done only in circumstances where no other action would remove the prejudice claimed." *Id.* at 137.

Likewise, the substitution of an alternate juror for a regular juror during trial is a matter entrusted to the discretion of the trial court. *Milam v. Vestal*, 671 S.W.2d 448, 453 (Mo.App.1984), *citing* 9 C. Wright and A. Miller, § 2484, p. 476 (1971) (replacement of jurors discretionary). The trial court did not abuse its discretion in refusing to declare a mistrial nor in refusing to replace the crying juror, who was responding to the evidence properly admitted in this case. Defendant's claim of error in this respect is without merit.

▇▇ Defendant next contends that the trial court erred in sustaining the prosecution's objection to evidence of conduct and statements by T.N.'s mother, Cindy Naucke, to show her feelings of bias and prejudice against the defendant. On direct examination of Barbara Ginther, a friend who defendant began dating after he separated from Cindy Naucke, defense counsel asked whether Ms. Ginther had contact with Cindy Naucke since 1985. Ms. Ginther started to relate an incident that had occurred at defendant's house before his marriage to Cindy Naucke was dissolved. Ms. Ginther testified she drove up to the house, the defendant came out to tell her Cindy was there, and Cindy came out and threw a brick. The answer was interrupted by an objection, which the trial court sustained. Defense counsel explained at the bench that this was offered to show Cindy Naucke's ill will toward defendant, which defendant claimed motivated her to make the child abuse charge against defendant. However, defendant made no offer of proof. Although the partial answer, which went into the record ahead of the objection, to some extent discloses the nature of the evidence, it is not disclosed when this incident occurred in relation to the charges that were brought in this case

in October 1989. If the incident occurred, as the questioning indicated, before the dissolution of the marriage of defendant and Cindy Naucke, it occurred at least two years prior to the time Cindy Naucke claimed defendant abused T.N.

The same type of evidence was rejected in the direct examination of Brad Lewis, a friend of the defendant, called as a witness by defendant. Mr. Lewis had attended Bob and Cindy's wedding on June 25, 1983, and had visited in their home thereafter. He was asked, "Did you ever hear Cindy Naucke make any threats to Bob Naucke?" The prosecution's objection was sustained and no offer of proof was made. Absent an offer of proof, it is not clear what Mr. Lewis' answer would have been, but assuming it would have been "Yes," it is still impossible to tell when such a threat was made. Assuming it was during the marriage of Cindy Naucke and the defendant and before they separated, it would have been from 3½ to 4½ years prior to any allegations of child abuse by Cindy Naucke.

Evidence of occurrences or statements of this type at or near the time Cindy Naucke brought the child abuse charges against defendant would be admissible impeachment evidence to show the bias of the witness. Furthermore, such evidence is not limited to cross-examination but may be shown by extrinsic evidence. *State v. Johnson*, 700 S.W.2d 815 (Mo. banc 1985). However, in *Johnson* we also stated: "Notwithstanding these established evidentiary principles, the authority of a party, and in particular a criminal defendant, to show the existence and extent of a witness' bias, prejudice or hostility is subject to the sound discretion of the trial court." *Id.* at 817. More importantly, the actions or statements evidencing the bias must be shown by a proper offer of proof to have been close enough in time to the matters at issue to be relevant. In this instance, the absence of such an offer of proof, coupled with what information can be gleaned from the record concerning the timing of these occurrences, fails to demonstrate that they were relevant and admissible. At the very least, the admission of this evidence was discretionary with the trial court under the

rule stated in *Johnson.* The trial court did not abuse its discretion in excluding this evidence.

■ Finally, defendant contends that the trial court erred by openly exhibiting bias against him and by injecting itself into the case. Defendant cites Supplemental Legal File p. 1 as support for the claim in his brief that during a break in defendant's direct testimony for a bench conference, the judge yelled at the defendant in the presence of the jury for drinking the court reporter's water. In the handwritten order by the trial judge dated August 30, 1990, page 1 of the Supplemental Legal File, the court acknowledged that during defendant's direct examination, the court admonished defendant that he should not be drinking the court reporter's water. Defendant advised the court that he had received permission to drink the water. This occurrence was an unfortunate misunderstanding, but it did not constitute the sort of thing for which a court on appeal could or would be expected to reverse an otherwise valid conviction.

■ Defendant also complains that the trial court exhibited bias against the defendant by cutting off defendant and refusing to allow him to explain his answers. We have studied the entire record and we do not find evidence of bias either for or against the defendant. We point out that the defendant took the stand to give his own testimony after lunch on Friday afternoon, October 28. The trial judge had given the jury the option of either coming back on Saturday to complete the trial or going over until Monday. The jury decided to return on Saturday. As of the lunch hour on Friday, the defendant still had to give his direct and cross-examination and also call his main expert witness. Furthermore, the court needed to hold the instruction conference, read the instructions to the jury, and complete closing arguments before the case could be submitted on Saturday. Defendant's testimony was completed on Friday afternoon. Defendant called his expert Saturday morning. The expert completed his direct and cross-examination and two rounds of redirect. Instructions were read beginning at 1:20 P.M. Saturday. Closing arguments began immediately thereafter and were completed so that the case was submitted to the jury at 2:55 P.M. Saturday. The jury returned its verdict at 5:55 P.M. that same day.

It is undoubtedly true that the trial judge was pushing both counsel during the last day and a half to complete the trial according to the schedule promised to the jury. We do not find evidence of bias toward defendant in these efforts of the trial court to complete the trial in a timely fashion.

In *State v. Davis,* 653 S.W.2d 167, 177 (Mo. banc 1983), we stated that the trial court "must maintain a position of absolute impartiality, avoid any conduct which might be construed as indicating a belief on the part of the judge as to the guilt of the defendant and the court should not demonstrate hostility toward the defendant." We reaffirm this important principle, but we do not find in the record in this case evidence of such abuse by the trial court.

We note that the defendant in his brief concedes that the written word (the record) "completely fails to express the trial judge's hostile demeanor and obvious bias in favor of the state." Nevertheless, defendant asks us to act on faith in finding that the trial court exhibited bias and demonstrated hostility toward the defendant in front of the jury. In *Davis* we said, "The standard for determining if the trial court has acted improperly is whether the trial court's conduct is such as to prejudice the minds of the jury against defendant thereby depriving defendant of a fair and impartial trial." *Id.* We do not find bias demonstrated in the record by the trial judge against the defendant, and we refuse, as we must, the defendant's invitation to make such a finding outside the record. Defendant's claim that the trial judge exhibited bias and hostility toward the defendant in the presence of the jury is rejected.

## V.

## CONCLUSION

We affirm the defendant's conviction of sodomy. We hold that the use of the depo-

sition of T.N. taken out of the personal presence of the defendant as provided in §§ 491.680 and 491.685 did not violate confrontation. We further hold that an "indicia of reliability" hearing was not required in the case of Dr. Monteleone. We hold that the evidence established a submissible case of sodomy and that the trial court did not err in the other respects claimed by defendant and discussed herein.

COVINGTON, HOLSTEIN and BENTON, JJ., concur.

ROBERTSON, C.J., dissents in separate opinion filed.

BLACKMAR, Senior Judge, dissents in separate opinion filed.

RENDLEN, Senior Judge, concurs in opinion of Blackmar, Senior Judge.

ROBERTSON, Chief Justice, dissenting.

I respectfully dissent.

Section 491.680, RSMo 1986, permits the State to use prerecorded testimony of an alleged child victim of sexual abuse "in lieu of the child's personal appearance ... at trial." Section 491.680.2. The statute permits the use of the prerecorded testimony of the child even though the child is available to testify. The only condition imposed on the use of the videotape at trial instead of live, in-person testimony is that the trial judge consider whether the child witness will be emotionally or psychologically traumatized "if required to testify in open court or to be brought into the personal presence of the defendant." *Id.*

This case raises two foundational constitutional questions which must be answered. The first is whether the use of a videotaped statement of an alleged child victim of sexual molestation in lieu of the child's personal appearance at trial violates the Confron-

tation Clause. The United States Supreme Court has not answered this question directly. We can, however, extrapolate from the Supreme Court's decision in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).[1]

*Craig* holds that a Maryland procedure for allowing a child victim to testify in a child sexual abuse case outside the defendant's physical presence does not violate the Confrontation Clause provided there is a case-specific finding by the trial court that the child witness will suffer *serious* emotional distress if required to testify in the presence of the defendant. As Section 491.680 does not, the Maryland statute expressly required that the emotional trauma facing the child be "serious." Md.Cts. & Jud.Proc.Code Ann § 9–102(a)(1)(ii) (1989). *Craig* relies on the Maryland Supreme Court's definition of "serious," in upholding Maryland statute. "Serious" emotional impact on the child must be "more than *de minimis*, i.e., more than 'mere nervousness or excitement or some reluctance to testify.'" *Craig*, 497 U.S. at ——, 110 S.Ct. at 3169, *quoting Wildermuth v. State*, 310 Md. 496, 524, 530 A.2d 275, 286 (1987). Further *Craig* requires that the trial court find that the child witness will be traumatized, not by the courtroom generally, but specifically by the presence of the defendant. *Craig* thus stands for the proposition that the Confrontation Clause is not offended when a child witness, whom the trial court finds will suffer serious emotional distress from confronting a defendant face-to-face, testifies live, via closed circuit television, at trial.

Once *Craig* determines that live testimony televised by closed circuit television is constitutionally acceptable, there remains little basis to conclude that previously

---

**1.** I confess that most of my discomfort in this case lies with *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157. In my view, the balancing test adopted by the bare majority in that case severs the Confrontation Clause from any textual grounding and turns the right to confrontation into little more than a weathervane, revealing not the Constitution, but the direction of the prevailing popular policy wind. Nevertheless, the Confrontation Clause is what the United States Supreme Court says it is. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

Because *Craig* is essentially standardless—it has no textual support—we are perfectly justified in extrapolating from the procedure *Craig* approves, and not from any constitutional constraint.

videotaped testimony shown the jury by television is different for purposes of the Confrontation Clause. Indeed, if one speaks in terms of the manner in which testimony is presented to the jury, there is no essential difference between a live, closed circuit telecast of a child's testimony and a televised broadcast of the child's videotaped testimony taken at a prior time. In both cases, the jury views the testimony by the same method, a television screen. *Spigarolo v. Meachum*, 934 F.2d 19 (2 Cir. 1991), agrees. In that case, the United States Court of Appeals rejected the defendant's claim that "his constitutional rights were violated because the videotape was made before the jury was sworn and was not 'live' as was the one-way closed circuit procedure in *Craig*." *Id.* at 24.

Having determined that *Craig* permits the use of videotaped testimony at trial if the trial court finds that the emotional trauma facing the child from a face-to-face confrontation with the defendant is serious, the majority is left with the task of showing how Naucke's conviction meets *Craig* standards. The majority salvages this conviction from the Sixth Amendment attack only by a collection of judicial glosses and assumptions, not supported by the record in this case.

First: No one can seriously dispute that Section 491.680 violates the teachings of *Craig;* the statute permits use of videotaped testimony in lieu of live testimony if open court will traumatize the child. The statute also permits use of videotaped testimony in lieu of live testimony if there is any showing of emotional or psychological trauma. Indeed, under the standardless language of the statute, the trial judge need not find any emotional trauma; he or she must only "consider" whether such trauma may be present. *Craig* countenances neither policy. *Craig* permits non-face-to-face confrontation only if the presence of the defendant will cause the child witness serious trauma.

Second: To heal this constitutional infirmity, the majority turns to *State v. Sanchez*, 752 S.W.2d 319 (Mo. banc 1988). *Sanchez'* dicta speculates that under appropriate facts, the emotional trauma facing a child might be so serious as to render a child unavailable to testify as a witness. *Sanchez* provides no standard for determining whether a witness is unavailable.

Third: To fill the void still remaining—the lack of a standard for determining whether the trauma facing the child witness is serious within the meaning of *Craig*—the Court reasons: The trial court could not have found this child unavailable if the emotional trauma facing her were not serious. The trial court found this child unavailable as a witness. Therefore, the trauma facing the child in this case was serious.

Voila! The statute now requires exactly what *Craig* requires, despite the absence of any language within the statute to support *Craig* requirements. Section 491.-680.2, as amended by the Court, now reads:

> In determining whether or not to allow such motion, the court shall consider the elements of the offense charged and *[shall find]* the emotional or psychological trauma to the child if required ~~to testify in open court or~~ to be brought into the personal presence of the defendant *[is so serious that it renders the child witness unavailable]*. Such recording shall be retained by the prosecuting attorney and shall be admissible in lieu of the child's personal appearance and testimony at preliminary hearings and at trial, conflicting provisions of section 544.270, RSMo, notwithstanding. A transcript of such testimony shall be made as soon as possible after the completion of such deposition and shall be provided to the defendant together with all other discoverable materials.

The statute as written by the Court no doubt meets the standards set out in *Craig*. However, it is not the statute adopted by the legislature, approved by the Governor, or relied on by the trial judge in this case. It is one thing for a court to supply a definition for a statutory term. After all, it was the Maryland Supreme Court's definition of "serious" in *Wildermuth*, 310 Md. at 524, 530 A.2d 275, that permitted *Craig* to rule as it did. It is quite another for the

Court to supply a missing word to save a conviction.

Having imaginatively parried the Confrontation Clause attack, the Court faces a second question: Whether the presentation of section 491.680 testimony violates the Missouri Constitution.

The Sixth Amendment's Confrontation Clause guarantees the accused the right "to be *confronted* with the witnesses against him." [Emphasis added.] Article I, section 18(a) of the Missouri Constitution assures every person accused of a crime the right "to meet the witnesses against him *face to face.*" [Emphasis added.] Appellant claims, of course, that the textual differences between the Missouri Constitution's and the Confrontation Clause requires a different analysis and a different result.

Until this case I would have agreed with the majority's repeated, but question-begging assertion that the contours of the Sixth Amendment Confrontation Clause are identical to those of Missouri's face-to-face guarantee, but only because I had not imagined, and this Court had not faced, a statutory procedure that so clearly abrogates a constitutional guarantee. In *State v. Hester*, 801 S.W.2d 695, 697 (Mo. banc 1991), this Court wrote, "[e]ach time our courts have compared the state and federal constitutional provisions, they have concluded that article I, section 18(a) of the Missouri Constitution protects the same rights as the Sixth Amendment of the United States Constitution." *State v. Schaal*, 806 S.W.2d 659 (Mo. banc 1991), considers the constitutionality of Section 492.304. That statute permits the use of visual and aural recordings as evidence at trial where specified conditions are met. One of those conditions is that "the child is available to testify." Section 492.304.1(8). *Schaal* quotes *Hester* for the proposition that "[t]he confrontation rights protected by the Missouri Constitution are the same as those protected by the Sixth Amendment of the United States Constitution." *Schaal*, 806 S.W.2d at 662. But *Schaal* concludes that neither *Craig*, nor *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), applies because the child witness is available to testify at trial. Availability of the witness is part of the factual fabric of *Schaal; Schaal* depends on the child's availability in upholding the constitutionality of Section 492.304 against an article I, section 18(a) attack.

It is beyond serious dispute that the texts of the Confrontation Clause and article I, section 18(a), are different. The majority does not face this distinction directly. Instead the majority claims that article I, section 18(b), of the Missouri Constitution, permits the use of the very type of deposition contemplated by Section 491.680. Article I, section 18(b), provides:

> Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will *fully protect the rights of personal confrontation* and cross-examination of the witness by defendant, the state may take the deposition of such witness, and either party may use the same at the trial, as in civil cases, provided there has been substantial compliance with such orders.

[Emphasis added.] Section 18(b), the majority reasons, is an exception to the "face to face" requirement of section 18(a). And so it is.

But the majority apparently reasons that the presence of the word "confrontation" in both the Confrontation Clause and section 18(b) makes the decision in *Craig* both relevant and controlling for purposes of section 18(b). I disagree.

In my view, this Court's deference to *Craig* is both unfortunate and incorrect in light of the textual differences between the constitutions. The people of Missouri intended depositions under section 18(b) to require the same face-to-face confrontation as would be required at trial. There is no other explanation for the presence of the word "personal" in section 18(b). In my

view, section 18(b) permits the use of a deposition at trial against a criminal defendant only if that deposition was taken under the same constitutional assurances that mark face-to-face confrontation at trial.

To rely on section 18(b), the majority must ignore the word "personal" in article I, section 18(b), as it modifies "confrontation." By ignoring "personal," the majority transforms section 18(b) into a rule of discovery instead of a constitutional assurance that the guarantee of face-to-face confrontation will continue to be honored when a deposition is taken by the State to preserve testimony.

Article I, section 18(b), as amended by the Court, now reads:

> Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will fully protect the rights of ~~personal~~ confrontation [*as defined by Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157 [111 L.Ed.2d 666] (1990)] and cross-examination of the witness by defendant, the state may take the deposition of such witness, and either party may use the same at the trial, as in civil cases, provided there has been substantial compliance with such orders.

With respect, the majority's need to manipulate the trial court's conclusions by selectively assuming legal conclusions, providing missing language, and ignoring words in the Missouri Constitution proves too much. The majority assumes that the trial court's seventy-word finding is founded on the same reasoning it required the majority nearly 6,000 words to explain. This is so despite the trial court's unequivocal statement that its conclusions are "under Section 491.680," not *Craig.* To me, it is obvious that this conviction cannot stand; it relies on an unconstitutional statute. No amount of *post hoc* justification saves the conviction from its constitutional infirmity.

If the Constitution no longer meets the needs of a society that, quite properly, wishes to protect children from perverted adults, it can be changed. The Constitution cannot be changed, however, behind the closed doors of the judicial branch, no matter how well-intentioned or wise the changes we suggest might be. Changing the Constitution remains the people's business.

Possessing both an understanding of and an agreement with the policy the Court wishes to adopt, I must nevertheless respectfully dissent. The Constitution will not permit the majority's result.

BLACKMAR, Senior Judge, dissenting.

The principal opinion represents a logical and scholarly approach to the very difficult problem of securing evidence from young children who are the alleged victims of sexual abuse by adults. Volumes of recent authority demonstrate that some modification of traditional procedural requirements is appropriate. Courts differ as to the extent of permissible deviation. The Supreme Court of the United States has discussed problems in the context of the Sixth Amendment's protection of the accused's right "to be confronted with the witnesses against him." *Cf. Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). We must deal also with *art. I, § 18(a),* of the Missouri Constitution, which grants the accused the right "to meet the witnesses against him face to face." · I believe that the framers of our constitution chose the words they did in order to emphasize the importance of the right. This opinion represents my views as to how we should interpret the provisions of our own constitution. I regret that I am unable to concur fully.

There are four features of testimony in open court: (1) the jury can see the witness; (2) the defendant can see the witness; (3) the witness can see the defendant; and (4) the jury can see the defendant. This last feature surely is not essential. Juries, no doubt, observe the defendant while a witness is testifying, if the format of the courtroom will permit it, but they are sup-

posed to watch and listen to the witness. The defendant, moreover, could opt to be absent from all or part of the trial. Although historically it might be thought important that the witness look the defendant in the eye while testifying, *Craig* eliminated the third requirement upon a substantial showing of necessity. But *Craig* suggests that a procedure that allows a witness to testify without facing the defendant must reproduce courtroom conditions as nearly as possible.

I would not go so far as Chief Justice Robertson does. I am willing to follow the lead of *Craig* in allowing a deposition procedure under our own constitutional provision but would require the safeguards approved in *Craig*. That procedure provided the defendant with the means for continuing consultation with her attorney while the child testified. The technology for this expedient is readily available. I would mandate it. Denying the accused the ability to communicate with counsel as the witness testifies effectively removes the second feature of testimony in open court because the review of a deposition on videotape does not provide the defendant an adequate opportunity to observe the witness while testifying and to prepare for cross-examination. In expressing this view I do not believe that I am "straining at a gnat."

We have recognized that the right to counsel connotes "the right to freely communicate and to sit with ... counsel during trial or at least be so located that [attorney and client] are able to communicate without interruption." *State v. Hatfield*, 465 S.W.2d 468, 469 (Mo.1971) (quotation omitted). While aspects of the statutory scheme embodied in §§ *491.680* and *491.685* offer the defendant broad protections, the phrase "contemporaneous cross examination" denotes an opportunity to cross examine immediately after the direct testimony is elicited. Cross-examination is often best when the iron is hot and a witness's contradictions can be addressed at the moment. So I would insist on the *Craig* procedure as a requirement of *art. I, § 18(a)* of our Constitution.

I cannot accept the suggestion in the principal opinion that the "short delay ... before proceeding with the cross-examination cannot possibly jeopardize the effectiveness of the cross-examination...." My reaction is to the contrary. I would like to have my client's reaction as the witness testifies. The defendant should be able to nudge counsel when the witness says something during the direct examination that calls for later probing. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), relied on in the principal opinion, dealt with prior statements by a witness who was available and testifying and is therefore not applicable to the concerns raised here.

The fact that counsel in this case proceeded with cross-examination without requesting a break for consultation with the defendant may indicate that at least some attorneys would not view a break in the proceedings as a "luxury." The procedure approved in the principal opinion forces counsel to choose between an immediate cross-examination and one informed by the accused's comments and suggestions. Such a procedure is not justifiable when it would be easy to provide contemporaneous access to counsel. I believe we should mandate such access.

The principal opinion finds significant that "the timing of the deposition [three days before the videotape was shown to the jury] ... made it essentially part of the trial." This statement implicitly recognizes that, for confrontation purposes, admitting a pretrial deposition is somewhat less satisfactory than testimony before the court during trial without facing the defendant. I would be very cautious about departing from the traditional mode and would insist on ample safeguards.

I cannot accept the mention of the Missouri statute in *Craig* as an indication of approval of our procedure by the Supreme Court of the United States. Our statute does not preclude the imposition of the *Craig* safeguards and, therefore, does not on its face violate the defendant's right to confrontation. The *Craig* opinion does not endorse procedures that vary from the one

before the Court in that case. The defendant in *Craig* was allowed continuing communication with counsel. Indeed, the Court found significant to its holding that the child witnesses "were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified." *Craig*, 110 S.Ct. at 3170. Without regard to *Craig*, furthermore, I would impose the procedure as a requirement of state law, in the implementation of our own constitutional mandate.

In *Brady v. State*, 575 N.E.2d 981 (Ind. 1991), our sibling Supreme Court dealt with a constitutional provision which, like ours, uses the phrase "face-to-face." It held that the state provision is stricter than the federal model, by a vote of 3 to 2. The dissenters emphasized that the Indiana statute required the *Craig* procedure. Thus none of the members of that court would endorse the procedure here approved.

I do not disagree with the holding that the social worker could provide the needed testimony as to the trauma of testifying but am concerned lest such findings come too easily. Trial judges should be very reluctant to sanction departures from the traditional mode and should explore the possibility of presenting the victim's testimony in the usual manner.

I express one further concern. There is a severe problem if the jury is allowed to take the deposition tape with it and to play the tape during its deliberations. This is contrary to the usual practice with depositions, even though they may have been marked as exhibits. The statutory deposition procedure is a substitute for testimony and should not be given a preferred status by allowing the jury special access to it. If the jury wants to hear the deposition again it should ask the court, just as it might ask for the reading of some portion of the testimony heard in court. The judge could use discretion as to such requests. But I agree that this point is lost to the defendant for failure to preserve it.

I agree with substantially everything else that is said in the principal opinion but,

for failure to impose the *Craig* procedure, would reverse and remand for new trial.