**William SPIGAROLO,**
**Petitioner–Appellant,**

v.

**Larry R. MEACHUM, Commissioner of Corrections, State of Connecticut, Respondent–Appellee.**

**No. 1122, Docket 90-2521.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1991.

Decided May 20, 1991.

John R. Williams, New Haven, Conn. (Williams and Wise, New Haven, Conn., of counsel), for petitioner-appellant.

Steven M. Sellers, Asst. State's Atty., Chief, Appellate Unit, Office of the Chief State's Atty., Wallingford, Conn., for respondent-appellee.

Before OAKES, Chief Judge, and LUMBARD, and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

Having been convicted in 1986 of two counts of sexual assault in the second degree, Conn.Gen.Stat. § 53a–71(a)(1) (1985), and four counts of risk of injury to a minor, Conn.Gen.Stat. § 53a–21 (1985), after a six-day jury trial before Judge Hadden in the Connecticut Superior Court, William Spigarolo filed a petition for a writ of habeas corpus in the Connecticut District Court pursuant to 28 U.S.C. §§ 2241, 2254 (1988).[1] Spigarolo claims that the use of videotape testimony of the two minor victims in this case violates his right to be confronted with the witnesses against him. We affirm the district court's dismissal of the petition.

The evidence submitted by the state showed that between August and December of 1984, the defendant, often with the assistance of the victims' mother, M, engaged in numerous sexual activities with the victims, G and B, at the time nine and

---

1. He was sentenced to twenty years of incarceration, with execution to be suspended after nine years, and five years of probation.

six years old respectively. These activities took place at an apartment in Hamden, where the victims lived with their mother. The defendant, M's boyfriend, often visited the apartment and spent the night. The incidents first came to light in October 1984, when school officials observed that B had been "acting out" sexually inappropriate behavior. From December 1984, through August 1985, the victims disclosed the incidents in interviews with social workers and police, and in discussions with their father and his present wife, with whom they were placed in temporary custody in January 1985. During this period, the disclosures by the victims were at times incomplete and inconsistent, and on one occasion in December 1985, G recanted previous statements and said that no sexual activity between herself and the defendant had taken place. Both G and B stated at various times that they had been afraid to report the incidents for fear of reprisal from the defendant or their mother. In addition, a medical test performed on G in December 1984 disclosed the presence of gonorrhea in her throat. Although a subsequent test performed one week later produced a negative result, the state presented testimony tending to show that the latter test result did not invalidate the results of the former test.

Prior to trial, the state moved for an order, pursuant to Public Law 85–587 (1985) (amended by Conn.Public Law 89–177, current version at Conn.Gen.Stat. § 54–86g (1989)), permitting, upon order of the court, the videotaping of the children's testimony outside the presence of Spigarolo, and the use of such testimony at trial. Specifically, § 54–86g permits such testimony to be taken in the absence of the accused and the jury in "any criminal prosecution of an offense involving assault, sexual assault or abuse of a child twelve years of age or younger...." At a hearing, the state offered the expert testimony of Sidney Horowitz, Ph.D., and Robert S. Adams, M.D. Dr. Horowitz testified that he had never met or interviewed the alleged victims, but that it was his opinion, based on his experience in dealing with children of the same age, that the presence of the alleged offender would have an adverse effect on the accuracy of the victim's testimony. Dr. Adams, a psychiatrist, testified that he had been treating the victims for several months and continued to see them on a weekly basis. When asked on direct examination whether he believed that the victims would be more open in their testimony if it were given outside the presence of the accused, he replied: "I would guess so. I have no proof, but I would guess so." The defense offered no evidence in opposition to the § 54–86g motion. The Superior Court granted the state's motion, finding that the children would be traumatized by testifying in the presence of the petitioner, and that the children's testimony would be more reliable in a neutral setting.

The testimony of G and B was taken the day before the jury was sworn. Present at the videotaping were the assistant state's attorney, defense counsel, and the trial judge. Spigarolo was allowed to watch and hear the testimony in another room on a television monitor.

On appeal after conviction, the Connecticut Supreme Court remanded the case to the Superior Court to decide whether, as required by its intervening decision, *Connecticut v. Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988), there was clear and convincing evidence of a compelling need to exclude the defendant from the witness room during the videotaping.

On remand, the state presented the testimony of the victims' father and stepmother. The father had obtained temporary custody of the children in January 1985, immediately after the five month period of alleged abuse. He testified that B and G suffered from severe nightmares two to three nights a week, and that on one occasion, B awoke crying and screaming, "He's killing, he's killing me." He stated that both children had a fear of even seeing Spigarolo, and that they had difficulty talking about the alleged incidents. In addition, the father testified that he had attended the trial of M in 1985 on the same

allegations of sexual abuse, conducted in late 1985.[2] At the videotaping, M was in a room adjacent to the room in which B and G testified. At one point during that proceeding, G became aware of M's presence when M had an outburst. Her father testified that G became "totally upset," crouched down in a corner and was trembling and shaking. The children's stepmother testified that the children discussed their fear of testifying in front of Spigarolo. She also corroborated the father's testimony concerning the children's nightmares and G's reaction to M's presence at M's trial. She added that after M's outburst at her trial, B came running out of the room in which he was testifying and into the room where his father was waiting, and tried to hide behind his father. Like Drs. Horowitz and Adams, the children's father and stepmother expressed their opinion that B and G would not testify truthfully in the presence of Spigarolo. The defense offered no evidence at the remand hearing.

The Superior Court held that the state proved by clear and convincing evidence that there was a compelling need to exclude the defendant from the witness room during the videotaping of the testimony of the two minor victims because both victims would be so intimidated by the physical presence of Spigarolo that it would seriously call into question the reliability and trustworthiness of their testimony. The Connecticut Supreme Court affirmed the conviction on appeal, holding that the trial court's finding regarding the necessity of the videotape procedure was not clearly erroneous. 210 Conn. 359, at 375, 556 A.2d 112.

Spigarolo then petitioned the Connecticut District Court for habeas corpus relief. Chief Judge Burns denied the petition and Spigarolo appeals contending that the videotape procedure violates his sixth amendment right "to be confronted with the witnesses against him...."

2. After the state rested its case in her trial, M pleaded guilty to two charges of risk of injury to a minor. As part of the plea bargain, M testified on behalf of the state at Spigarolo's trial.

At the time of the proceedings in the Connecticut Superior Court, § 54-86g provided:

(a) In any criminal prosecution of an offense involving assault or abuse of a child twelve years of age or younger, the court may, upon motion of any party, order that the testimony of the child be taken in a room other than the courtroom in the presence and under the supervision of the trial judge hearing the matter and be televised by closed circuit equipment in the courtroom or recorded for later showing before the court. Only the judge, the attorneys for the defendant and the state, persons necessary to operate the equipment and any person who would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. The attorneys and the judge may question the child. The defendant may observe and hear the testimony of the child and may consult with his attorney, but the court shall ensure that the child cannot hear or see the defendant.

(b) If the court orders the testimony of a child to be taken under subsection (a) of this section, the child shall not be required to testify in court at the proceeding for which the testimony was taken.

In *Connecticut v. Jarzbek*, 204 Conn. 683, 529 A.2d 1245, the Connecticut Supreme Court construed § 54-86g as further requiring the trial court to conduct an evidentiary hearing during which the state must satisfy the court, by clear and convincing evidence, that there is a compelling need for such testimony. Specifically, the state must show the child "would be so intimidated, or otherwise inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question." 204 Conn. at 704-05, 529 A.2d 1245.[3]

3. The 1989 amendments to § 54-86g, though not applicable to the videotaped testimony in this case, incorporate the *Jarzbek* criteria. The statute now provides that:

The Supreme Court has addressed the constitutionality of "videotape statutes" in two recent cases. In *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the court considered an Iowa statute which allowed the use at trial of a screen to shield the defendant from the testifying children's view. The court held that the statutory presumption that a victim of child sexual abuse would be traumatized if forced to testify in the presence of the defendant was an insufficient basis for infringing the defendant's right to confront his accusers. The court based its decision, in part, on the failure of the trial court to make a finding that the particular witnesses needed such protection. 487 U.S. at 1021, 108 S.Ct. at 2803.

*Coy* left open the question of whether exceptions exist to the face-to-face right to confrontation at trial. *Id.* This issue was addressed in *Maryland v. Craig*, — U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), in which the court noted that "our precedents establish that 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' a preference that 'must occasionally give way to considerations of public policy and the necessities of the case.'" *Id.* 110 S.Ct. at 3165 (emphasis in original) (citations omitted). *Craig* upheld the procedure established by a Maryland statute allowing child victims to testify, by one-way closed-circuit television, outside the courtroom and the presence of the defendant. Writing for the Court, Justice O'Connor declared that if the state makes a showing of necessity regarding the particular victim, then the important state interest in protecting child victims from the trauma of testifying in sexual abuse cases justifies the use of a procedure allowing the child to testify without face-to-face confrontation with the defendant. The court noted that the threat of trauma to the child in testifying must be caused specifically by the presence of the defendant and not merely by the court-

the court may order the defendant excluded from the room or screened from the sight and hearing of the child only if the state proves, by clear and convincing evidence, that the child would be so intimidated, or otherwise

room. *Id.* at 3169. In addition, "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* (citations omitted).

Section 54–86g, as construed by the Connecticut Supreme Court in *Jarzbek*, requires a finding by the trial judge, after an evidentiary hearing, that the state has proven by clear and convincing evidence that the minor is so inhibited by the presence of the defendant that it would have a deleterious effect on the truthfulness of the victim's testimony. Here, the Superior Court, after a second evidentiary hearing on the matter, found that the *Jarzbek* criteria had been satisfied. After reviewing the evidence considered by the Superior Court, the Connecticut Supreme Court concluded, and the district court agreed, that "the trial court was not clearly erroneous in ruling that there was clear and convincing evidence that the defendant's physical presence would seriously have called into question the minor victims' testimonial truthfulness and reliability." 210 Conn. at 375, 556 A.2d 112. After examining the testimony of Drs. Horowitz and Adams, and the children's father and stepmother, we hold that the ruling of the Superior Court met the *Craig* requirement of finding an individualized necessity for conducting the videotape procedure.

*Craig*, in part, also rested on the safeguards in the Maryland statute that preserved the other elements of the confrontation right. Those safeguards include the requirements that "the child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." 110 S.Ct. at 3166.

inhibited, by the physical presence of the defendant that a compelling need exists to take the testimony of the child outside the physical presence of the defendant in order to insure the reliability of such testimony.

■ Spigarolo argues that the procedures followed by the trial court did not adhere to those approved in *Craig*. Prior to G's testimony, the following colloquy took place:

The Court: G, you want to put up your hand again? All right. Now, you just were asked some questions about telling the truth and you said you were going to tell the truth.

G: Yes.

The Court: You know what it means to put your hand in the air and swear to tell the truth?

G: Yes.

The Court: And do you know what it means to tell the truth and not to tell the truth?

G: Yes.

The Court: You know the difference?

G: Yes.

The Court: All right. What happens to if you don't tell the truth?

G: You get in trouble.

The Court: You get in trouble. All right. And do you want to get in trouble?

G: No.

The Court: All right. Are you going to tell the truth here today?

G: Yes.

The affirmation administered by the Superior Court did not violate the confrontation clause. When children testify, the trial court may fashion an oath or affirmation that is meaningful to the witness. For example, Fed.R.Evid. 603 permits witnesses to declare that they will testify truthfully by "oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." The Notes of the Advisory Committee state that "[t]he rule is designed to afford the flexibility required in dealing with ... children. Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required." *See also* 1 U.S.C. § 1 (1988) ("oath" includes affirmation). In the case at bar, the trial judge asked G to raise her right hand, and twice asked her if she was going to tell the truth. G answered in the affirmative to both questions. This affirmation was sufficient for confrontation clause purposes. In any event, Spigarolo waived his right to argue on appeal that G was not administered an oath because he failed to object during the videotape procedure or at trial.

■ Relying on a parenthetical in *Craig*,[4] Spigarolo contends that his confrontation rights were violated because the videotape did not show the entire bodies of G and B during their testimony. However, Judge Burns viewed the videotape and found that for much of the time, the entire body of the child witnesses was visible. She also determined that "were these children to be sitting in a witness box in court, given their respective sizes, it is doubtful more than the head and chest would be seen." While *Craig* did note that the ability to view the body of the witness was helpful to the judge, jury and defendant, it did not require the entire body of the victim to be visible for the duration of the examination. There is no reason to believe that cross-examination of the children was impaired by a lack of a full view of the witnesses at all times.

■ The defendant also contends that his constitutional rights were violated because the videotape was made before the jury was sworn, and was not "live" as was the one-way closed circuit procedure in *Craig*. He argues that his counsel was unable to gauge the reaction of the jury during cross-examination, nor able to tailor his cross-examination based upon the course of events which transpired during trial.

*Craig* did not rest on the distinction between contemporaneous and videotaped testimony. Justice O'Connor noted, without disapproval, that thirty-seven states have statutes allowing videotaped testimony of child victims in sexual abuse cases.

---

4. Justice O'Connor's opinion in *Craig*, while discussing the safeguards in the Maryland closed-circuit television procedure, noted that the jury was able to view "the demeanor (and body) of the witness as he or she testifies." 110 S.Ct. at 3166.

110 S.Ct. at 3167 n. 2. She also recognized the "compelling" interest in the "protection of minor victims of sex crimes from further trauma and embarrassment." *Id.* at 3167 (quoting *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)).

In all other respects, the videotaped testimony conformed to the safeguards approved in *Craig:* the children were administered an affirmation or oath, defense counsel was present and cross-examined the children, and the jury was able to observe their demeanor.

Spigarolo's other arguments are without merit.

Affirmed.