Mack Willie THOMAS, Petitioner–Appellant,

v.

Frank GUNTER, Executive Director, Colorado Department of Corrections, Respondent–Appellee.

No. 91–1044.

United States Court of Appeals, Tenth Circuit.

April 28, 1992.

1479

Barbara S. Blackman of Cherner and Blackman, Denver, Colo., for petitioner-appellant.

Clement P. Engle, Asst. Atty. Gen., State of Colo. (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., with him on the brief), Denver, Colo., for respondent-appellee.

* The Honorable Howard C. Bratton, Senior District Judge of the United States District Court for the District of New Mexico, sitting by designation.

Before LOGAN and SETH, Circuit Judges, and BRATTON, Senior District Judge.*

BRATTON, Senior District Judge.

Petitioner-appellant Mack Willie Thomas appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Appellant was convicted of two counts of sexual assault on a child after a jury trial in Colorado District Court, Boulder County. The issue in this appeal is whether the state trial court violated appellant's Sixth Amendment right of confrontation by admitting into evidence videotaped depositions of the child victims taken out of appellant's physical presence.

Appellant was accused of sexually assaulting his three-year-old daughter and a four-year-old neighbor boy. At the time of trial, the girl was four years old, and the boy was five. Before trial, the prosecutor, seeking to avoid bringing the children into court, filed a motion requesting the court to allow the children's statements into evidence pursuant to Colorado's child hearsay statute.[1] Instead of granting the motion, the trial court suggested the parties proceed under another statute authorizing videotaped depositions of child victims under certain circumstances.[2] That statute provides:

(1) When a defendant has been charged with an unlawful sexual offense, as defined in section 18–3–411(1), and when the victim at the time of the commission of the act is a child less than fifteen years of age, the prosecution may apply to the court for an order that a deposition be taken of the victim's testimony and that the deposition be recorded and preserved on video tape.

(2) The prosecution shall apply for the order in writing at least three days prior to the taking of the deposition. The defendant shall receive reasonable notice of the taking of the deposition.

1. Colo.Rev.Stat. § 13–25–129 (1986).

2. Colo.Rev.Stat. § 18–3–413 (1986).

(3) Upon timely receipt of the application, the court shall make a preliminary finding regarding whether, at the time of trial, the victim is likely to be medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence. Such finding shall be based on, but not be limited to, recommendations from the child's therapist or any other person having direct contact with the child, whose recommendations are based on specific behavioral indicators exhibited by the child. If the court so finds, it shall order that the deposition be taken, pursuant to rule 15(d) of the Colorado rules of criminal procedure, and preserved on video tape. The prosecution shall transmit the video tape to the clerk of the court in which the action is pending.

(4) If at the time of trial the court finds that further testimony would cause the victim emotional trauma so that the victim is medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence, the court may admit the video tape of the victim's deposition as former testimony under rule 804(b)(1) of the Colorado rules of evidence.

The trial court conducted a hearing pursuant to Part (3) of the statute and admitted the videotaped testimony at trial pursuant to Part (4). Although the court ordered the parties to take videotaped depositions out of the presence of the appellant, he allowed the parties to agree to the specific procedures they would use. The parties stipulated and the depositions proceeded as follows.

The depositions were videotaped at the C. Henry Kempe Center for the Treatment and Prevention of Child Abuse and Neglect in Denver. The parties utilized the same procedures for each deposition. They placed the child in a room with a therapist chosen by the prosecutor and then a private investigator chosen by the petitioner. The therapist conducted direct examination for the state, and the private investigator conducted cross examination for the defense. The judge, court reporter, counsel, and appellant, sitting in a separate room, viewed the deposition through a one-way mirror and on videotape monitors. If they needed to communicate with the examiners they could pass notes under the door.

The judge and court reporter stayed at the Kempe Center for only a portion of the daughter's direct examination. Later the parties viewed the depositions with the judge, who ruled on objections so the tapes could be edited if necessary. The jury viewed the videotapes at trial and found appellant guilty as charged.

After his conviction, appellant appealed to the Colorado Court of Appeals, arguing that the videotaping procedure was unconstitutional because he was deprived of face-to-face confrontation with the victims and of effective cross examination. Specifically, he brought three claims relevant to this appeal. First, he objected to the questioning by a non-attorney. Second, he objected to the fact that he and his attorney could only communicate with the questioner by passing notes under the door. Third, he objected to the fact that the judge was not present to terminate an overly long direct examination of the daughter after which the daughter was tired and unresponsive on cross examination.

The court of appeals remanded, under *Coy v. Iowa*, [3] for "further specific and particularized findings as to each individual child-witness," *People v. Thomas*, 770 P.2d 1324, 1328 (Colo.App.1988), but otherwise affirmed. With regard to the procedures used at the depositions, the court held that (1) because the petitioner had agreed to the non-attorney questioning, Colorado's doctrine of invited error precluded him from arguing he was prejudiced; (2) because no more sophisticated procedure was avail-

---

3.  487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). In *Coy,* the Supreme Court held it unconstitutional for a child-victim to testify without seeing the defendant where the court made no findings that the particular child would be harmed by testifying in the presence of the defendant.

able, the fact the parties had to communicate with notes was not error; and (3) because counsel had a later opportunity to object, the fact the judge left the deposition was also not error. *Id.* at 1328–29.

The Supreme Court of Colorado granted certiorari, reversed the remand to the trial court, and affirmed on all other issues. *Thomas v. People,* 803 P.2d 144 (Colo. 1990). The court held that under the standards the United States Supreme Court elaborated in *Maryland v. Craig,*[4] the findings of the trial court were adequate and the procedures were constitutional in all other respects.

Appellant then petitioned the United States District Court for the District of Colorado for a writ of habeas corpus, arguing that the use of the videotapes violated his right to confrontation under *Maryland v. Craig.* The district court disagreed and denied his petition. *Thomas v. Guenther,* 754 F.Supp. 833 (D.Colo.1991). We affirm.

■ *Maryland v. Craig* set the standards by which a child witness can constitutionally testify against a defendant at trial in the absence of face-to-face confrontation with the defendant. 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). *Craig* held that defendant's right to confrontation is satisfied when (1) the denial of confrontation is necessary to further an important public policy and (2) where the reliability of the testimony is assured.[5] *Id.* at 3166. Appellant contends that at his trial, neither prong was satisfied.

### Public Policy

■ *Craig* held that a child-witness may testify out of the presence of the defendant when necessary to further the state's interest in protecting the physical and psychological well-being of its children. *Id.* at

3167. To insure that the state denies face-to-face confrontation only to further this purpose, the state must show on a case-by-case basis that the procedure is necessary to protect the particular child involved. *Id.* at 3169. The trial court must hear expert testimony regarding the particular child and must make specific findings that the child would be traumatized, not by the courtroom generally, but by the presence of the defendant, in more than a *de minimus* amount. *Id.*

■ The Colorado videotaping statute requires the trial judge find the child "medically unavailable" before allowing the tape into evidence. Unavailability for confrontation clause purposes is a mixed question of law and fact we review *de novo. Martinez v. Sullivan,* 881 F.2d 921, 926 (10th Cir.1989), *cert. denied,* 493 U.S. 1029, 110 S.Ct. 740, 107 L.Ed.2d 758 (1990). Because the trial court's findings on unavailability were the same findings required for the "public policy-necessity" prong under *Craig,* we will review this question *de novo* as well. *See Thomas,* 803 P.2d at 150.

■ In making its finding of unavailability, the court heard expert testimony from each child's therapist. The daughter's therapist testified the daughter "had a real close bonding with her father," and was quite upset she could no longer see him. The therapist stated that, as a result of this bonding, if the daughter testified in front of her father she would feel issues of "disloyalty" and "responsibility for somehow finding a way to see him again." The therapist implied the child might refuse to testify or might change her story if she saw her father in order to renew her relationship with him. She further stated that a "videotaped session with some neutral person would be ... much less damaging

---

**4.** 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**5.** In the Maryland procedure reviewed in *Craig,* the child-witnesses testified at the trial but were examined by the attorneys in a separate room out of the presence of the judge, jury, and defendant. Those parties remained in the courtroom

and viewed the examinations on closed circuit television. 110 S.Ct. at 3161. Although the children's testimony was taken at the time of trial, there is no constitutional difference between such contemporaneous testimony and the videotaped testimony under consideration here. *See Spigarolo v. Meachum,* 934 F.2d 19, 24–25 (2d Cir.1991).

to her than making any kind of testimony in front of her father."

The little boy's therapist told the court the boy was "terrified" the petitioner would hear him telling other people what had happened. She stated he might have lingering nightmares if forced to testify in court with the petitioner present and would have "extraordinary" fears something very bad would happen to him. Regarding his ability to communicate in the courtroom, the therapist testified there was a possibility the boy would "withdraw" on the witness stand or "might want to start running around the room."

After hearing the testimony, the trial court ruled that the children were unavailable, stating:

> What I mean by their unavailability is that because of the trauma and the inability to testify in open court, and in front of the defendant Mr. Thomas, and in front of a jury and open courtroom, I think that would be far more harmful to these children than any other thing.

We hold the court made the particularized findings *Craig* requires. After *Craig*, a trial court must find that testifying in front of the defendant will cause the child witness emotional trauma, and that the trauma must impair the child's ability to communicate.[6] In this case, the court heard testimony about how each child would react to seeing the appellant, and how each child would suffer emotional harm. The daughter would experience feelings of disloyalty, loss, abandonment, and responsibility for the loss, and she might refuse to communicate truthfully on the witness stand. Her therapist also testified that appearing in court with the appellant would be "damaging" to the child. The little boy would experience such fear if he testified truthfully that his therapist predicted he could have "lingering" nightmares. Thus he "could not reasonably communicate" and would suffer serious emotional trauma. Finally the trial court specifically found both children would be unable to testify and would be traumatized by seeing the appellant. Thus the *Craig* requirements were met. *Cf. Vigil v. Tansy*, 917 F.2d 1277, 1279 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 995, 112 L.Ed.2d 1078 (1991) (constitution "requires no more" than adversarial hearing and court determination that "testimony by child victim in the courtroom would result in the child suffering unreasonable mental and emotional harm").[7]

### Reliability

■ To be constitutional, the videotaping procedure must assure the reliability of the child's testimony, even though the testimony is not given in the physical presence of the defendant, judge, and jury. *Craig*, 110 S.Ct. at 3166. In other words, the testimony must be functionally equivalent to live, in-court testimony and must be subject to rigorous adversarial testing. *Id.* The de-

6. 110 S.Ct. at 3170. The Maryland statute at issue in Craig required the trial court to find that "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Id.* at 3161 (quoting Md.Cts. and Jud.Proc.Code Ann. § 9–102(a)(1)(ii)). Notwithstanding the statutory specificity, the Court identified the state's interest as the more general interest "in protecting child witnesses from the trauma of testifying" as the important state interest sufficient to abrogate the necessity of face-to-face confrontation. *Id.* at 3169. Accordingly, it is not clear whether it is enough for a trial court to find the child will suffer serious emotional trauma by testifying in front of the defendant or whether the court must make the additional finding that the child will be unable to communicate. We need not address that problem here because the trial court heard testimony addressing the childrens' behavior in the courtroom and the probability of long term trauma. The trial court's conclusion, although brief, appears to consider both aspects.

7. Petitioner argues the expert testimony before the trial court was speculative and not specific enough. We note that the Court in *Craig* held testimony that "each child would have *some or considerable difficulty* in testifying in Craig's presence," one child "would *probably* stop talking," and another child "*may* refuse to talk" not to be constitutionally inadequate per se. 110 S.Ct. at 3161, 3171 (emphasis supplied).

fense must have the opportunity to probe the testimony in front of the jury and expose any infirmities through cross examination to allow the jury to decide whether to give weight to the testimony. *Id.* at 3164 (quoting *Delaware v. Fensterer,* 474 U.S. 15, 22, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985)).

■ We determine reliability from the totality of the circumstances and presume, in this habeas corpus proceeding, that the factual findings of the Colorado Supreme Court are correct. *Myatt v. Hannigan,* 910 F.2d 680, 684–85 (10th Cir.1990); *see also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). The conclusion that the statements were reliable is a mixed question of law and fact we review *de novo. Myatt,* 910 F.2d at 685.

■ The factors we consider to determine reliability are (1) whether the children were competent to testify; (2) whether they testified under oath; (3) whether the defense conducted contemporaneous cross examination; and (4) whether the judge, jury, and defendant were able to view the demeanor of the witnesses. *Craig,* 110 S.Ct. at 3166; *Spigarolo v. Meachum,* 934 F.2d 19, 23 (2d Cir.1991). The only issues before us involve the second and third factors: oath and cross examination.[8]

■ *Oath:* Appellant objects that the judge did not administer an oath to the children. However, the Colorado Supreme Court found that the examiners explained to the children "it was important to tell the truth" and asked the children "whether [they] knew the difference between telling the truth and lying." The children then explained their perceptions of truth-telling and lying and knew the consequences of lying. This type of oath, one that is meaningful for children, satisfies the require-

ments of the confrontation clause. *See Spigarolo,* 934 F.2d at 24.

■ *Cross Examination:* Appellant claims that introducing the depositions at trial violated his right to cross examination because his attorney did not conduct the cross examinations of the children. We are concerned that the examinations were conducted by non-attorneys and that the attorneys could only communicate with the examiners by passing notes under the door. *Craig* emphasized the critical importance of effective cross examination, *see United States v. Begay,* 937 F.2d 515, 522–23 (10th Cir.1991), and under the Maryland statute approved in *Craig* attorneys conducted the examinations of the children. However, the Colorado Supreme Court specifically found that the judge gave the parties the option of having the attorneys ask the questions, and the petitioner's counsel consented to the use of non-attorneys. *Thomas,* 803 P.2d at 151. These findings are entitled to the presumption of correctness mandated by 28 U.S.C. § 2254(d). *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Accordingly, we find that appellant waived any objection to the non-attorney cross examination.

■ Further, we find the Colorado Supreme Court ruled against appellant on this claim because of this waiver, and that this ruling was an independent and adequate state ground precluding federal habeas review. *See Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Ylst v. Nunnemaker,* — U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). The court stated: "We do not decide in this case whether therapist questioning over the defendant's objection would fatally impair the sufficiency of the guarantees of reliability of videotaped deposition testimony." *Thomas,* 803 P.2d at 151 n. 16. In other words, had counsel preserved his objection, the state court

---

8. Before trial, when the judge and the parties viewed the videotape for the judge to rule on objections, petitioner's counsel questioned the daughter's competency to testify on cross-examination because of the lengthy direct examination. He also argued that the cross-examination was ineffective because the child was tired. The

judge, however, ignored the second argument and said he was required to find the child competent under a Colorado competency statute, § 13–90–106(1)(b). Counsel did not raise the competency issue on appeal and has not raised the issue here.

would have reached the merits of the claim.[9]

We might still review appellant's claim if he demonstrated "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "a fundamental miscarriage of justice." *Coleman*, 111 S.Ct. at 2565. An attorney's choice can never constitute "cause," unless counsel was ineffective, *id.* at 2566–67, and the appellant has not argued there has been a miscarriage of justice. Regarding prejudice, the petitioner does not argue the non-attorney cross examinations were ineffective. Nor does he argue his attorney was unable to communicate with the questioners, or the investigator failed to ask questions the attorney would have asked.

His only specific complaint is that the therapist's direct examination of the daughter was so long she was tired, inattentive, and unresponsive for cross examination. Trial counsel believed had the judge not left the deposition before completion of the direct examination, he could have terminated the direct examination. Counsel imply appellant was therefore denied the right to effectively cross-examine his daughter.

Prejudicial curtailment of cross examination may be a denial of a defendant's right to confrontation. *Begay*, 937 F.2d at 522–23. However, appellant does not show how he was prejudiced by the child's fatigue; he cannot show how his cross examination was limited—he points to no questions the child was unable to answer. Accordingly, we have no basis by which to find a constitutional violation.

*Conclusion:* We hold that appellant was not denied his sixth amendment right to confrontation by the videotaped depositions admitted into evidence at his trial. The district court properly denied his petition for habeas relief:

AFFIRMED.

---

9. The Colorado Court of Appeals rested its holding completely on the procedural bar. "The doctrine of invited error precludes defendant from arguing that he was prejudiced because his attorney did not conduct the questioning during the videotape depositions." *People v. Thomas,* 770 P.2d at 1328–29. The supreme court, however, appeared to address the merits. "Because defense counsel consented to the questioning by therapists, and because defense counsel had the opportunity to pass notes to the therapists ..., we decline to hold that absence of attorney questioning makes this procedure unreliable." *Thomas,* 803 P.2d at 151. However, as noted in the court's footnote quoted in our text, had appellant objected to the therapist questioning, the court's analysis would have been different.