Javier JUAREZ, Petitioner,

v.

Michael A. NELSON, Warden, El Dorado Correctional Facility, and Carla J. Stovall, Attorney General of Kansas, Respondents.

No. 02–3125–JAR.

United States District Court, D. Kansas.

Aug. 4, 2003.

John K. Bork, Office of Attorney General, Topeka, KS, Elizabeth L. Reimer, Kan-

sas Judicial Council, Topeka, KS for Atty. General of Kansas.

Elizabeth Seale Cateforis, University of Kansas, School of Law, Lawrence, KS, for Petitioner.

## MEMORANDUM ORDER AND OPINION

ROBINSON, District Judge.

This matter is before the Court on a Petition for a Writ of Habeas Corpus (Doc. 1) seeking federal habeas relief from state convictions, pursuant to 28 U.S.C. § 2254. After considering the parties' submissions, the Court is prepared to rule. Because Petitioner has failed to show that the state court's admission of hearsay statements of child witness violated his rights under the Confrontation Clause of the Sixth Amendment, the Petition shall be denied.

**Factual Background**

A jury in the District Court of Seward County, Kansas convicted Petitioner of one count of aggravated sodomy, in violation of K.S.A. § 21–3506(a)(1). The victim was a four year old girl. The victim, referred to as "R.R." in the record, did not testify at trial. The trial court admitted R.R.'s out of court statements through the testimony of her mother, Joella, and the testimony of two police officers who had interviewed R.R.

At trial, R.R.'s mother Joella testified that on November 18, 1995, Petitioner came to her house drunk, and Joella let him come inside. Two of Joella's children were present at the time. Her son G.R. was asleep on the living room couch; her daughter R.R. was eating cereal in the kitchen. Joella left Petitioner standing inside the front door, while she went to her bedroom to get medicine for her headache. After being in her bedroom for five to ten minutes, Joella, who is hearing impaired, returned to find Petitioner in the kitchen with R.R. The kitchen lights were off. Joella observed Petitioner trying to buckle his belt; and his underwear was visible. The bathroom was not accessible from the kitchen. When R.R. saw Joella, R.R. ran to the living room, appeared scared, and began crying. Joella demanded that Petitioner leave; he stayed for another ten to twenty minutes, begging Joella to forgive him. During this time R.R. continued to cry and act scared.

After Petitioner left, Joella asked R.R. what was wrong, and what Petitioner had done to her. R.R. responded by asking Joella why was he showing his private areas to her mouth and to her throat. Within 15 minutes after this conversation, Joella went to the sheriff's office with R.R. and reported the incident to Officer Woodward. Although Joella testified that she did not know whether R.R. told Officer Woodward anything, Officer Woodward testified that R.R. told him that her mouth hurt. R.R. was never taken to a doctor for a medical examination.

The next day, Officer Hardy interviewed R.R. in her home, outside of the presence of Joella. This interview lasted about 90 minutes. Officer Hardy testified that it took him some period of time to draw answers from R.R. in response to his questions. Officer Hardy asked R.R. if she had hurt her toes or her nose. R.R. replied no, that her mouth had been hurt. When Officer Hardy asked R.R. how her mouth had been hurt, R.R. replied that Petitioner had " . . . put it inside my mouth and put it all the way to the back, and it hurt." R.R. replied that she did not know how to draw it. Officer Hardy asked if R.R. could circle "it" on a drawing. On her own volition, R.R. asked for a drawing of a man with no clothes on. When presented with such a drawing, without hesitation, R.R. circled the groin area. When presented with a drawing of a girl, R.R. circled the mouth of the girl to show where she was hurt. R.R. also told Officer Hardy that the incident

occurred in the kitchen, next to the microwave; and that when her mother came in and turned on the lights, R.R. ran to the couch and her mother got into an argument with Petitioner. R.R. also told Officer Hardy that nothing like this had happened to her before.

At trial, Petitioner testified that he and Joella had developed a sexual relationship in 1994 and that he frequently visited her house. He further testified that on November 18, 1995, while he and Joella engaged in sexual activity in her bedroom, he heard R.R. and her brother crying outside of the bedroom door. Their crying made him want to leave. Joella told him to leave or she would call the police. Petitioner denied even speaking to R.R. that night.

The State filed a motion to admit R.R.'s hearsay statements to her mother and the two officers. The trial court held two hearings on the admissibility of these hearsay statements: the first was during the preliminary hearing; the second hearing was at trial out of the presence of the jury. At the first hearing, R.R.'s responses to counsels' questions were frequently inaudible. R.R. did not remember seeing Petitioner, did not remember what she had told the police officers, and appeared confused. R.R. began to cry, said she was scared and wanted to go home. The judge found that the requirements of K.S.A. § 60–460(dd) were met such that R.R.'s hearsay statements were admissible.

The second hearing was conducted outside of the presence of the jury, at the time of trial. This second hearing was conducted by a *different* judge. Again, R.R.'s responses to counsels' questions were frequently inaudible. R.R. testified that she could not remember speaking to the police officers; R.R. could not remember anything about the drawings they showed her. R.R. again cried during the hearing and said she was scared.

According to Joella's testimony at the two hearings, after the sexual assault, R.R. started having nightmares about a stranger in the house, and the nightmares grew progressively worse. R.R.'s personality changed after the assault. R.R. acted scared, uncomfortable, quiet, depressed, afraid of men and upset. R.R. would not smile and she overate. R.R. was never seen, assessed or evaluated by a medical doctor or psychologist concerning these issues. No expert testimony was offered at either the first or second hearing. The trial court ruled that R.R.'s out of court statements to her mother and the two officers were admissible.

## Procedural Background

After the jury convicted Petitioner, the trial court granted the State's motion for Durational Departure and imposed a sentence of 150 months in prison. Petitioner is currently in custody at the El Dorado Correctional Facility in El Dorado, Kansas.

On direct appeal, Petitioner claimed that the trial court violated his Sixth Amendment right of confrontation, by admitting R.R.'s hearsay statements. Petitioner argued that the trial court erroneously found that R.R. was not available to testify, without any expert psychological or medical evidence to support its finding. Petitioner did not challenge the trial court's finding that R.R.'s hearsay statements had adequate indicia of reliability and was not induced by use of threats or promises. The Kansas Court of Appeals affirmed the conviction; and the Kansas Supreme Court denied review.

Petitioner filed a state habeas petition challenging the court's upward departure in sentencing him. The trial court denied his habeas petition; the Kansas Court of Appeals affirmed the denial; and on February 6, 2000, the Kansas Supreme Court denied review. On April 30, 2002, Peti-

tioner filed this action for federal habeas relief.

**Standard of Review**

Under 28 U.S.C. § 2254(d),[1] a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

■ A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "... materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law" set forth in Supreme Court cases.[2] A decision is an "unreasonable application" of clearly established federal law if a "state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."[3] Unreasonable application of facts includes an unreasonable extension of a principle, or an unreasonable refusal to extend a principle to the facts at hand.[4] The courts are to employ an objective standard in determining what is unreasonable.[5]

■ Although unreasonable determinations of fact are a second basis for a writ, a state court's determination of a factual issue shall be presumed to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence.

**Discussion**

Petitioner contends that the trial court's admission of R.R.'s hearsay statements violated his rights under the Confrontation Clause of the Sixth Amendment and violated the Kansas statute concerning the admission of hearsay statements of a child witness. In essence, Petitioner seeks relief under both sections of § 2254(d). Petitioner claims that the trial court's finding that R.R. was not available was an unreasonable determination of fact. Petitioner also claims that the trial court unreasonably applied Supreme Court principles in admitting the hearsay without considering other options.

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right of confrontation has been applied to the states through the Fourteenth Amendment.[6] But, the Supreme Court has held that the Confrontation Clause does not guarantee criminal defendants the absolute right to a face-to-face meeting with the witnesses against them. The preference for face-to-

---

1. Because Petitioner filed his petition for habeas relief well after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA applies to his petition. *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

2. *Williams v. Taylor,* 529 U.S. at 405, 120 S.Ct. 1495.

3. *Id.* at 413, 120 S.Ct. 1495.

4. *Williams v. Taylor,* 529 U.S. at 407, 120 S.Ct. 1495.

5. *Id.* at 409, 120 S.Ct. 1495.

6. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965); *Myatt v. Hannigan,* 910 F.2d 680 (10th Cir.1990).

face confrontation at trial "must occasionally give way to considerations of public policy and the necessities of the case." [7]

Such considerations of public policy and necessity underlie the Kansas legislature's enactment of K.S.A. § 60–460(dd),[8] a statute that makes hearsay statements of child witnesses admissible under some circumstances. Out of court statements made by a child who is a victim of a crime may be admissible to prove the crime, if after a hearing, the trial judge finds that the child is disqualified or unavailable as a witness, and that the child's statement is apparently reliable and the child was not induced by threats of promises, to make a false statement. The trial court in this case held two hearings, one during the preliminary hearing and one during trial, and found that R.R. was unavailable as a witness and that R.R.'s statements had an adequate indicia of reliability.

Of course, the trial court's compliance with a state statute or rule of evidence does not settle the issue. "As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, and federal habeas courts may not interfere with state evidentiary rulings unless the rulings in question rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." [9] State and federal rules of evidence may provide guidance, but on habeas review, the critical question is whether the court's hearsay rulings deprived the petitioner of his Sixth Amendment rights under the Confrontation Clause.[10]

In *Ohio v. Roberts*,[11] the Supreme Court established a two-part test for determining whether admission of hearsay statements of a witness who does not testify at trial violates the defendant's right to confrontation. First, the witness must be

7. *See Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)[videotaped deposition outside of defendant's presence]; *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988)[child witnesses shielded by a screen].

8. 60–460. Hearsay evidence excluded; exceptions.
Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:
(dd) Actions involving children. In a criminal proceeding or a proceeding pursuant to the Kansas juvenile justice code or in a proceeding to determine if a child is a child in need of care under the Kansas code for care of children, a statement made by a child, to prove the crime or that a child is a juvenile offender or a child in need of care, if:
(1) The child is alleged to be a victim of the crime or offense or a child in need of care; and
(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced

to make the statement falsely by use of threats or promises. If a statement is admitted pursuant to this subsection in a trial to a jury, the trial judge shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, any possible threats or promises that might have been made to the child to obtain the statement and any other relevant factor.

9. *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir.2001)[internal citation and quotation marks omitted].

10. *Matthews v. Price*, 83 F.3d 328, 332 (10th Cir.1996)[citing *Hopkinson v. Shillinger*, 866 F.2d 1185, 1200 (10th Cir.1989)], *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990); *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982).

11. 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

unavailable; second, the witness's statements must have "adequate indicia of reliability."[12] Kansas courts construe K.S.A. § 60–460 as adopting and incorporating the *Ohio v. Roberts* two-prong test. As the Kansas Court of Appeals stated in *State v. Myatt*,[13]

> K.S.A. 60–460(dd) allows for the admission of a child victim's hearsay statements only if the two prongs of Roberts are met....If the trial judge finds the child is "unavailable" he must determine if the statement is "apparently reliable" and "the child was not induced to make the statement falsely by use of threats or promises"......It is apparent to this court the legislature intended to incorporate the Roberts standard for admissibility into this statute.

■ Petitioner contends that the trial court's finding that R.R. was "unavailable" was an unreasonable determination, since it was not based on expert opinion, but on the trial court's observations, stated experience in raising children and on the testimony of R.R.'s mother. Petitioner argues that the trial court's observations of R.R.'s nervousness and timidity is unremarkable. Such behavior is common in both adult and child witnesses. Petitioner further argues that the trial judge inappropriately relied on his own stated experience in raising five-year-old children. And, the trial court's reliance on the testimony of R.R.'s mother was not reasonable because she was an interested party.

Citing *Thomas v. Gunter*,[14] Petitioner argues that the court needed expert testimony to find that R.R. would suffer emotional trauma if she was forced to testify in front of Petitioner, and that R.R.'s ability to communicate would be affected by such trauma. In *Thomas*, the Tenth Circuit applied the same standards that were established by the Supreme Court in *Maryland v. Craig*[15] to admit live trial testimony by one-way closed-circuit television. In *Craig*, the Supreme Court held that a defendant's confrontation rights would not be violated if there was a showing of necessity, that is, that the witness would be traumatized by testifying live in the defendant's presence. The Court found that the state has an interest in protecting the physical and psychological well-being of its children. Similarly, in *Coy v. Iowa*,[16] the Supreme Court held that placing a screen between the child witness and defendant during the child's in court testimony violated the Confrontation Clause absent a showing of necessity.

Thus, witness testimony may be conducted in a manner that does not afford the defendant a face-to-face confrontation with the witness, without doing violence to the defendant's confrontation rights. The state must show the necessity, that the witness would be traumatized by testifying live in the defendant's presence. If the state can show that testimony by videotaped deposition, closed-circuit television, or some other means will protect the child witness from the trauma of testifying in the defendant's presence, then the protection of the child outweighs the defendant's right to face-to-face confrontation.[17]

---

**12.** *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539; *Moore v. Reynolds*, 153 F.3d 1086, 1107 (10th Cir.1998) [citations omitted], *cert. denied* 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 362 (1999).

**13.** 237 Kan. 17, 24–25, 697 P.2d 836 (1985).

**14.** 962 F.2d 1477 (10th Cir.1992).

**15.** 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**16.** 487 U.S. 1012, 1020, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

**17.** *Maryland v. Craig*, 497 U.S. at 853–54, 110 S.Ct. 3157.

In *Thomas,* the Tenth Circuit held that such determination of necessity requires expert testimony that establishes that the witness would be traumatized by testifying in the defendant's presence.[18] But, the *Thomas* case is inapposite, for it addressed the standards for determining the admissibility of videotaped depositions of child victims who were deposed outside of the defendant's presence. The quality and nature of the evidence required to justify testimony by videotape deposition, closed-circuit television, or some other means that does not allow face-to-face confrontation is simply not at issue in this case.

Rather, the issue in this case is the showing required to admit a non-testifying child witness's out of court statements. In *White v. Illinois,*[19] the Supreme Court rejected the rule of necessity required in its *Craig* and *Coy* decisions. In *White,* the four-year-old victim of a sexual assault did not testify at trial. The trial court admitted the victim's out of court statements made to her babysitter, mother, police officer, nurse, and doctor, under the spontaneous declaration and medical examination exceptions to the hearsay rules.[20] Although the evidentiary basis for admitting that child victim's statements differ from the evidentiary basis for admission of R.R.'s statements, the Court's holding that the state need not show necessity is applicable in this case. In *White,* the Supreme Court distinguished its *Craig* and *Coy* decisions, stating:

> Petitioner draws from these two cases a general rule that hearsay testimony offered by a child should be permitted only upon a showing of necessity—*i.e.,* in cases where necessary to protect the

child's physical and psychological well-being.

Petitioner's reliance is misplaced. *Coy* and *Craig* involved only the question of what *in-court* procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying. Such a question is quite separate from that of what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations. *Coy* and *Craig* did not speak to the latter question. As we recognized in *Coy,* the admissibility of hearsay statements raises concerns lying at the periphery of those that the Confrontation Clause is designed to address. There is thus no basis for importing the "necessity requirement" announced in those cases into the much different context of out-of-court declarations admitted under established exceptions to the hearsay rule.[21]

As the Eighth Circuit noted, *White* elucidates that *Coy* and *Craig* only addressed how far the State could go to protect children testifying at trial.[22]

■ Petitioner's reliance on the *Craig, Coy,* and *Thomas* decisions is misplaced. There is no requirement that the trial court consider expert testimony in determining whether the child victim is unavailable to testify. Even if the trial court erred in interpreting K.S.A. § 60–460, and even if the statute is properly construed to require expert testimony, federal habeas relief is not available. As the Supreme Court firmly stated in *Estelle v. McGuire,* "... it is not the province of a federal habeas court to reexamine state-court de-

---

**18.** *Thomas v. Gunter,* 962 F.2d at 1481.

**19.** 502 U.S. 346, 357–358, 112 S.Ct. 736, 743–744, 116 L.Ed.2d 848 (1992).

**20.** *See id.* at 350, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848.

**21.** *Id.* at 358 [citation omitted].

**22.** *Schaal v. Gammon,* 233 F.3d 1103, 1107 (8th Cir.2000).

terminations on state-law questions." [23] Federal habeas actions simply do not provide relief for errors of state law.[24]

■ In this case, the trial court relied on its observations of R.R. testifying, as well as the record of R.R.'s testimony at the preliminary hearing. The trial court noted that R.R. became upset whenever she talked about the incident. The judge noted that R.R.,

> ... is very rigid in her posture, had her lower lip stuck out, looked at the floor. She would answer questions and respond to counsel until they got into an area dealing with the defendant, and then she became evasive, would only nod her head, she would not talk.

From the judge's observations of R.R.'s demeanor while testifying, and the judge's familiarity with five-year-olds, "[t]hey're not unique, I raised a couple of them," the judge concluded that R.R. was unable to testify.[25] The Kansas Court of Appeals agreed with the judge's assessment that the court did not "... need an expert witness to come in and tell me things that I could observe with my own eyes, that I could observe with my own ears." Thus, the Kansas Court of Appeals held that where a child is called to testify and proves unable to communicate, expert testimony that the child is so traumatized that she is unable to testify is not necessary. Such expert testimony would add little to the observations of the trial judge, who was witnessing the child's inability to testify.[26]

The Kansas Court of Appeals observed that the trial court's ruling "was not based upon a prediction that the courtroom setting would traumatize the child to the extent that she would be unable to testify, but rather on the court's observation that she *was unable* to testify." [27] This Court concludes that R.R. demonstrated through her demeanor while testifying on two occasions, that she was traumatized and was in fact unable to testify. R.R.'s inability to testify and her ongoing traumatization were corroborated by the testimony of her mother.

Thus, this Court concludes that the trial court's determination that R.R. was unavailable to testify was a reasonable determination. R.R.'s unavailability is the only issue. Because Petitioner did not raise the reliability of R.R.'s statements at trial, or on direct appeal, he acknowledges that the reliability of the statements cannot properly be argued now.

■ Petitioner also contends that the trial court's ruling was contrary to clearly established Supreme Court precedent requiring the court to consider alternatives

**23.** *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

**24.** *Id.* [citing *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)].

**25.** *See State v. Myatt*, 237 Kan. 17, 24–25, 697 P.2d 836 (1985)["A child is considered to be unavailable for constitutional purposes if the trial court determines that the child is incompetent to testify."[citation omitted]]. *See also State v. Pendelton*, 10 Kan.App.2d 26, 27, 690 P.2d 959, 961 (1984)[after a hearing pursuant to K.S.A. 60–460(dd), the trial court found, "the witness is disqualified for the reason that it appears that on inquiry he cannot relate in a logical progression the sequence of events, or, for that matter, the factual situation that gives rise to the issues in this particular lawsuit."]

**26.** *See State v. Juarez*, (Kan.Ct.App. No. 79,355)[unpublished opinion]. *See also State v. Pendelton*, 10 Kan.App.2d at 31–32, 690 P.2d 959 [Defendant's motion for a psychological examination of child victim was denied. Court had benefit of observing child victim testify for several minutes, sufficient for the court to determine the child's unavailability as a witness and the reliability of the child's statements.]

**27.** *Id.*

to admission of out-of-court statements of a non-testifying child witness. Petitioner refers to the *Craig* and *Coy* cases in which the Supreme Court addressed the showing required to have child witnesses testify in a manner that did not afford the defendant a face-to-face confrontation with the witness during his or her testimony. But, there is no clearly established law requiring the court to consider having the child testify by video deposition, closed-circuit television, or behind a screen. The cases cited by Petitioner merely address the justification for allowing these options. And, nothing in the Kansas statute dictates that the court consider these other options before admitting out of court statements by a non-testifying child victim. Moreover, even if the Kansas statute required the trial court to consider other options, no federal habeas relief would be available to address such an error.

In *Haynie v. Furlong,*[28] the petitioner raised a Sixth Amendment claim, relying on a Colorado statute that required the trial court to order the video deposition of a child witness the court determined to be unavailable. The Tenth Circuit rejected the claim, for "[i]nasmuch as Haynie's claim is founded on state law procedures, we cannot address it, because 'federal habeas corpus relief does not lie for errors of state law.' "[29]

### Conclusion

Petitioner has failed to show that the trial court made an unreasonable determination when it found that a non-communicative, observably traumatized child was unavailable as a witness. The trial court's determination was soundly based on its observations of the child while testifying, as well as the testimony of the child's mother. Expert testimony was not required. Moreover, there is no clearly established law that requires the trial court to consider options other than admission of a non-testifying child victim's out-of-court statements.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Petition for a Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is denied.

**IT IS SO ORDERED.**

---

**28.** 172 F.3d 62, 1999 WL 80144, *2 (10th Cir. Feb. 17, 1999).

**29.** *Id.* [citing *Matthews v. Price,* 83 F.3d 328, 331 (10th Cir.1996)(quoting *Lewis v. Jeffers,* 497 U.S. at 780, 110 S.Ct. 3092) ].